| | |
|---|---|
| **DISTRICT COURT OF THE VIRGIN ISLANDS** | |
| **DIVISION OF ST. CROIX** | |

CARL SIMON,

          **Plaintiff,**

    **v.**

RICK MULLGRAV, DWAYNE BENJAMIN,
LINDA CALLWOOD, RUSSELL WASHBURN,
JULIUS WILSON, DONALD REDWOOD,
JOHN P. deJONGH, Jr., KENNETH E. MAPP,
VINCENT FRAZER, CORRECTIONS
CORPORATION OF AMERICA,
GOVERNMENT OF THE VIRGIN ISLANDS,
NATASHA METCALF, DENNIS HOWARD,
AND OTHERS UNKNOWN

          **Defendants.**

**1:17-cv-00007**

TO:    Carl Simon, #17-0586, *Pro Se*
        CCA/Citrus County Detention Facility
        2604 West Woodland Ridge Drive
        Lecanto, FL 34461

## <u>REPORT AND RECOMMENDATION</u>

THIS MATTER is before the Court for initial screening of the Complaint in this action

pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A.[1] (ECF No. 1-1). On February 20,

2018, the Court granted Plaintiff Carl Simon's motion to proceed *in forma pauperis*. (ECF

No. 42).

---

[1] All citations to the United States Code, Virgin Islands Code, and Virgin Islands Code Rules are to the
electronic versions that appear in Lexis.

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 2

## I. Court's Obligation to Review

When a plaintiff has been granted *in forma pauperis* status, the court must screen the complaint for cognizable claims and *sua sponte* dismiss all or any part of the action that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id*. at 327.

"A complaint is 'malicious' when it contains allegations which the plaintiff knows to be false, it is part of a longstanding pattern of abusive and repetitious lawsuits, or it contains disrespectful or abusive language." *Stefanowicz v. SunTrust Mortgage*, 2017 U.S. Dist. LEXIS 3592 at *5 (M.D. Pa. January 9, 2017) (citing *Trader v. R.S.*, 2011 U.S. Dist. LEXIS 47324 at *2 (E.D. Pa. May 2, 2011)).

Whether a complaint fails to state a claim under § 1915 is governed by the same standard as Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Schreane v. Seana*, 506 F. Appx 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). Accordingly, a court must determine whether the complaint includes "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "Before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile." *Smith v. Delaware*, 236 F. Supp. 3d 882, 886 (D. Del. February 21, 2017) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002)).

## II. Review Procedure

Pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In reviewing a pro se pleading pursuant to § 1915, the court will accept all of the well-pleaded facts as true, disregard any legal conclusions, and determine whether the facts alleged in the complaint are sufficient to show that the movant has a "plausible claim for relief." *Ball v. Craver*, 2012 U.S. Dist. LEXIS 40025 at *30 (January 30, 2012) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)). A well-pleaded complaint includes clearly stated claims and facts to support those claims. *Bell Atlantic*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, 235-236 (3d ed. 2004)).

## III. Limit of this Review

On October 31, 2016, Plaintiff Carl Simon (Plaintiff) filed a complaint with the Superior Court alleging causes of action in relation to his transfer from Golden Grove Adult Detention Facility in the Virgin Islands (Golden Grove) to Citrus County Detention Facility

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 4

in Florida (Citrus County) and in relation to his confinement at Citrus County. (ECF No. 1-1). On February 13, 2017, Defendants Corrections Corporation of America, Dennis Howard, Natasha Metcalf, and Russell Washburn filed a Notice of Removal to the District Court. (ECF No. 1). As this document is being drafted, several other motions are pending before the District Court including motions to dismiss for lack of jurisdiction and a motion to remand. This report and recommendation does not address the merits of nor does it express a position on any other motions pending in the instant action. The Court's recommendations are limited to whether any of Plaintiff's claims in 1:17-cv-00007 ECF No. 1-1 are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.

## IV. Screening—Review

### A. Exhaustion of remedies

"No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532.

There are no references to formal grievance procedures in his complaint, however, Plaintiff states that:

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 5

1. He "sent correspondence to the Defendants notifying them of the conditions of his confinement at CCDF [Citrus County]." (EFC No. 1-1) at 13 ¶ 35.[2]

2. He submitted requests and sent correspondence to various defendants regarding his requests for warm clothing and his complaints about telephone rates and monitored attorney calls. *Id.* at 27-31 ¶¶ 72, 75, 76, 82.

3. He "made many pleas to the Defendants to change the cell lightings." *Id.* 32 at ¶ 85.

4. He advised "Defendants deJongh, Frazer, Wilson, Benjamin, Mapp, Mullgrav, and Government of the Virgin Islands" that he was "suffering the effects of the cell lighting (Psychological and or Physiological harm-deprivation of adequate sleep, irritability, headaches, eyestrain, fatigue and difficulty concentrating and sleeping)." *Id.* at 33 ¶ 86.

5. "[D]uring the months of November or December of 2014, he requested dental assistance." *Id.* at 35 ¶ 92.

6. Correspondence to Citrus County regarding the alleged lack of educational and vocational programs was answered thusly: "U.S. Virgin Island Law does not apply to Florida detention facilities . . . You can only be provided with what is available at the current detention facility in which you are housed." *Id.* at 34 ¶ 88.

---

[2] Except for [bracketed] words, all quoted material (ECF No. 1-1) is reproduced as it appears in Plaintiff's Complaint.

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 6

7.  He had conversations with Susan Gibson regarding his dental issues and treatment. *Id*. at 36-37 ¶¶ 98-99.

Plaintiff's complaint also details extensive correspondence and conversations with personnel at Citrus County and Golden Grove regarding his dental issues. *Id*. at 38-42 ¶¶ 102-115. The preceding notwithstanding, without further information, the Court cannot conclude with certainty whether Plaintiff has exhausted his administrative remedies.

**B. Causes of Action**

**1.  First Cause of Action: Negligent Delegation of Authority**

Plaintiff believes that the contract between Virgin Islands Bureau of Corrections (BOC) and Corrections Corporation of America (CCA),[3] for the purpose of housing Virgin Islands prisoners at the Citrus County Detention Facility in Lecanto, Florida (Citrus County), was made without adequately securing inmates rights; that the contract failed to ensure that Citrus County would provide adequate access to the courts; and that it failed to ensure that adequate medical care would be available. Plaintiff's Complaint also alleges that codified procedures were not followed when selecting Plaintiff for transfer.[4]

There are two contracts at issue. The first contract is the contract under which Plaintiff was transferred in 2014. This contract expired in 2010:

"[F]ollowing the expiration of the April 15, 2010 contract between the Government and the County for the housing of Virgin Island [sic] inmates at the Facility (the "2010 Contract"), the Government, the County and the

---

[3] Now known as CoreCivic. *See* ECF No. 1 and http://ir.corecivic.com/news-releases/news-release-details/corrections-corporation-america-rebrands-corecivic. Accessed February 23, 2018.
[4] *See* ECF No. 1-1 at 12-14 ¶¶ 32-37 and 42-43 ¶¶ 1-3.

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 7

> Contractor agreed to continue operating pursuant to the terms of the 2010
> Contract, pending the negotiation of a new Contract; [ ] this Contract replaces
> and supersedes the 2010 Contract.

Contract at 1.[5]

   The second contract is the Contract for Professional Services (Contract), executed

on December 16, 2015.

### a.  The contract was negotiated and executed pursuant to statute

   The Contract was entered into pursuant to Section 4503 of Title 5 of the Virgin

Islands Code, which reads, in pertinent part:

> (c) The Director of Corrections is authorized to enter into agreements to use
> the correctional or detention facilities of the United States Bureau of Prisons;
> or the correctional facilities of any state or local government or private
> correctional entity located in the United States, its territories, possessions,
> commonwealths or the District of Columbia, which are accredited by the
> American Correctional Association,[6] when the Director of Corrections
> determines that detention and/or correctional facilities within the Virgin
> Islands are inadequate to serve the best interest of the inmate or the general
> interest or welfare of the Territory; provided that as a condition of and prior
> to the transfer of any inmates, the Director of Corrections shall ascertain and
> insure the availability of educational and/or vocational programs at the
> institution they are to be transferred to for the purpose of enabling such
> inmates to gain marketable skills, and provided further that no inmate is to
> be transferred to any institution lacking any such program(s).

5 V.I.C. § 4503(c). In addition to being entered into pursuant to statute, it appears that

Virgin Islands procurement procedures were followed. Signatures affixed to the contract

---

[5] Contract for Services obtained from the USVI Department of Property & Procurement website at
https://dpp.vi.gov/contracts/citrus-county-detention-facility. Accessed February 21, 2018. All citations to
"Contract" are to the December 16, 2015 contract.
[6] ACA standards: http://www.aca.org/aca_prod_imis/aca_member. Accessed February 23, 2018.

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 8

indicate that the contract was negotiated by the Government of the Virgin Islands

Department of Property and Procurement, was signed by the Director of the Virgin Islands

Bureau of Corrections, and was approved by the Governor.[7]

### b. Inmates rights

The Contract provides:

. . . .Contractor shall provide Government Inmates care consistent with the individual Government Inmate's needs. Contractor shall furnish Government Inmates with subsistence and all necessary routine and emergency medical care; provide for their physical needs (to include issuing inmate uniforms); retrain them in safe, supervised custody; maintain proper discipline and control; make certain that sentences and orders of the committing court are faithfully executed; and otherwise comply with applicable law.

Contract at 14.

### c. Adequate access to the courts

The Contract provides:

Contractor shall provide Government inmates with constitutionally required access to the courts. Access to the courts means provision of those legal resources necessary to enable inmates to adequately prepare initial pleadings in non-frivolous civil rights actions contesting current conditions of confinement and collateral attacks on their criminal convictions. Contractor's responsibility to provide legal resources to Government inmates shall be limited to providing general federal legal reference materials. Access shall also include that provisions be made for inmates to obtain copies of materials for filing claims. The cost of such copies may be charged to non-indigent inmates as determined in Contractor's policies. Further, Contractor shall facilitate timely telephone contact and prompt processing of legal mail between Government inmates and their attorney for said purposes.

---

[7] Virgin Islands procurement procedures may be found at 31 V.I.C. Pt. II, Ch.23 and C.V.I.R. 31-023-000, Sec. 231-1, et. seq.

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 9

Contract at 17-18.

### d.  Medical care

The Contract provides:

The per diem rate described in Addendum II shall cover routine on site comprehensive health care, including medical, mental health, vision and dental care for Government inmates in accordance with ACA standards, community standards and Federal law.

Contract at 16.

### e.  Selection for transfer

The Virgin Islands Code Rules state:

Selection of inmates to be transferred may be made by the following criteria and *for any other good cause* as determined by the Director; to wit:

(1) Prisoners who voluntarily request transfer.
(2) Inmates in need of medical or psychiatric care.
(3) Recommendation by the Courts to transfer the prisoner.
(4) Inmate with long-term sentencing. However, this criterion will be valid only so long as the Virgin Islands lacks facilities for extended segregation of long-term prisoners. For this purpose "long-term" means a sentence of imprisonment of not less than 10 years.
(5) A finding by the prison administration that the inmate is a high risk for escaping.
(6) A pattern of disruptive action or behavior on the part of the inmate.
(7) A finding by the Director that correctional facilities within the Virgin Islands are inadequate to serve the best interest of the inmate or the general welfare of the Territory.

5-401 V.I. CODE R. § 4503-9 (emphasis added).

As has been shown, Plaintiff has failed to state a claim under his first cause of action

as a contract was in place when he was transferred in 2014. The record shows that the

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 10

current contract was entered into pursuant to statute and according to established

procurement procedures. The contract secures inmates rights, states that Citrus County

shall provide inmates with constitutionally required access to the courts, and ensures that

medical care is available in accordance with American Correctional Association (ACA)

standards. Regarding Plaintiff's allegation that the Director did not follow protocol when

selecting him for transfer, Virgin Islands rules show that the Director has the discretion to

select any inmate for any good cause when selecting inmates for transfer. Accordingly, the

Court will recommend that Plaintiff's first cause of action be dismissed for failure to state a

claim.

## 2. Second Cause of Action: Kidnap and False / Illegal Imprisonment and Ninth Cause of Action: Deliberate Indifference to Dental Needs

Plaintiff alleges that he was transferred illegally—and therefore kidnapped and

falsely imprisoned—because a valid contract between BOC and CCA was not in place. As

was shown above, the Virgin Islands BOC, CCA, and Citrus County were operating under the

2010 contact at the time of Plaintiff's transfer. The Court has no evidence that the 2010

contact was invalid or illegal.

Plaintiff also claims that he was illegally transferred from Golden Grove to Citrus

County, because the Contract provides that "[c]onsistent with applicable law *the*

*Government shall not transfer* to Contractor's custody *any inmate* who was hospitalized

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 11

within the prior thirty (30) days, . . . or *currently receiving specialty medical care.*" Contract at 16 (emphases added).

In the Contract, specialty medical care is defined as a patient who has been diagnosed with "renal disease, neurological conditions, cancer, HIV/ AIDS, Hepatitis C, blood deficiencies, chronic cardio-pulmonary disease (excluding hypertension) mental health Axis l diagnosis, physical handicap, tuberculosis, history of suicide attempts." *Id.* Other conditions "may be determined by Contractor to qualify as specialty medical care on a case-by-case basis." *Id.* Plaintiff asserts that the dental treatment he was receiving at the time of his transfer qualified as specialty medical care, and therefore he was transferred in violation of the terms of the contract.

Some of the facts support a conclusion that none of the defendants thought that Plaintiff was receiving specialty medical care prior to transfer. First, the Contract provides that the BOC "shall retake physical custody" of a transferred inmate receiving specialty medical care. The BOC did not retake custody, even after Plaintiff communicated with BOC, reporting that his dental care was inadequate and that his concerns were not being addressed by Citrus County. Plaintiff asserts that this means the defendants were indifferent to his medical needs. Another interpretation of the BOC's response is that they did not consider his dental treatment specialty medical care. Further evidence that the defendants did not consider Plaintiff's dental treatment to be specialty medical care is that Citrus County may be reimbursed for "the costs of specialty, non-routine health care

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 12

services, whether provided on or off-site for medical, dental and vision care" provided the BOC authorizes such treatment. Therefore, even if an inmate is transferred while receiving specialty medical care, there is a mechanism for that treatment to be provided without returning the inmate to the Virgin Islands.

Other facts support a conclusion that Defendants' knew that Plaintiff was receiving specialty medical care prior to transfer. When Plaintiff notified officials at Citrus County that he disagreed with the treatment plan proposed by the Citrus County dentist (tooth extraction) they responded that Plaintiff "had been provided a dental examination by a licensed dentist who evaluated that you can be treated by extractions and medications rather than highly specialized procedures." (ECF No. 1-1) at 38 ¶ 102. This seems to indicate that Citrus Country considered Plaintiff's Golden Grove treatment plan[8] to be specialized medical care. It also indicates that Citrus County failed to follow the terms of the Contract by not requesting permission to administer this specialty medical care as provided in the scope of services. Contract at 16 ¶ G-iv.

Plaintiff's Complaint recites ongoing discussions about his dental issues, including what appears to be a case conference:

---

[8] Prior to Plaintiff's transfer to Florida, Plaintiff was receiving dental treatment under a series of scheduled appointments for treatments from the GGACF Institution Dentist (Dr. Griffin) and his Dental Assistant (Latoya Edwards), for dental deficiencies (cavities, accumulated bone mass, broken tooth, etc.) that were hampering him from properly consuming his food and the Health Administrator (Ms. Charles) was also aware of Plaintiff's dental deficiencies and proposed treatment plan by Dr. Griffin. Dr. Griffin had placed temporary fillings in Plaintiff's teeth, made appointments to repair broken and cavity infected teeth (that were causing Plaintiff pain and discomfort), and was also in the process of scheduling an oral operation for an extraction and to reduce accumulated bone mass in Plaintiff's gum. (ECF No. 1-1) at 24 ¶ 63-64.

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 13

In the month of November of 2015, Plaintiff was consulted by Shelley Deweese, Myron Fredricks, Dr. Linda Callwood, and Director Rick Mullgrav at CCDF [Citrus County] concerning his housing and dental conditions at CCDF.

Plaintiff notified Dr. Callwood of Plaintiff's dental conditions where he had received absolutely no treatment for any of his dental deficiencies at CCDF from Dr. Howard.

Dr. Callwood told Plaintiff that she had reviewed Plaintiff's medical file and that the Medical Department at CCDF had told her that Plaintiff would not allow them to take any X-rays of Plaintiff's mouth and therefore would be unable to treat Plaintiff.

Plaintiff notified Dr. Callwood that what was being told to her by the Medical Department was false, and that Dr. Howard had in fact took some X-rays of Plaintiff's problem teeth but had insisted that He X-ray Plaintiff's entire mouth before he administered any dental treatment, and that Plaintiff had in fact been taken to dental services outside of the CCDF Institution where he had an X-ray taken of his entire mouth.

(ECF No. 1-1) at 39-40 ¶¶ 107-111.

Following that exchange, in January 2016, Plaintiff's mouth became swollen and infected, requiring antibiotics. At this point Citrus County told Plaintiff they would need to "consult with BOC to determine if BOC would pay to have the treatment done." *Id.* at 41 ¶ 113. Citrus Country claimed the Contract was "vague" on the issue and they needed to consult with BOC. *Id.* ¶ 114. Plaintiff was transferred from Citrus County before they received a response from BOC.

Plaintiff's pain, swollen mouth, infected tooth, the foul odor emitting from his mouth, and weight loss of "at least thirty (30) pounds" coupled with the prison personnels' response, may indicate an Eighth Amendment claim. *Id.* at 38 ¶ 105 and 40 ¶ 112. It

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 14

appears that BOC was aware of the ongoing problem. *Id*. at 39-41 ¶¶ 107-113. Dr. Howard's reasons for not providing medical care, including his claims that that he needed x-rays and that he had no other option but to extract Plaintiff's teeth, are contradicted by the record. Plaintiff had an off-site x-ray taken and submitted to at least one x-ray at the Citrus County prison. *Id*. at 36-37 ¶¶ 96-98 and 41 ¶ 113. Plaintiff's Golden Grove dentist devised a complex treatment plan that included a variety of procedures. It was not limited to tooth extraction. *See* n.8 *supra*. The BOC is required to provide health care records. Citrus County claimed they never received the records. *Id*. at 37 ¶ 99. *See also*, Contract at 17 ¶ (G)(ix) and 22 ¶ (A)(i). Also, the Contract is clear that cost was not a barrier. Pursuant to the contract, off-site treatment is permitted and, so long as services are pre-authorized, the BOC will reimburse "the costs of specialty, non-routine health care services, whether provided on or off-site for medical, dental and vision care and all hospitalizations." Contract at 17 ¶ (G)(iv). Contrary to Citrus County's statement to Plaintiff, the Contract is not vague.

Upon the foregoing, the Court finds that Plaintiff has demonstrated a genuine issue of material fact and will recommend that Plaintiff's ninth cause of action proceed. Finding no arguable basis in law, the Court must recommend that Plaintiff's second cause of action be dismissed as frivolous.

**3. Third Cause of Action: Arbitrary, Capricious and Retaliatory Transfer**

Plaintiff avers that he was denied due process when he was transferred without notice and a hearing. The United States Constitution does not give rise to a liberty interest

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 15

in avoiding transfer to more adverse conditions of confinement. *Meachum* v. *Fano,* 427 U.S.

215, 225 (1976). However, "States may in certain circumstances create liberty interests

that are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff asserts that the Virgin Islands Code Rules (Rules) confer a state-created due

process right in that, according to the Rules, a prisoner is entitled to notice and a hearing

before he is transferred outside the Territory. The Rules provide, in pertinent part:

Subchapter 4503. Procedures for Transfer of Prisoners Outside the Territory

§ 4503-1. Administrative Hearing Prior to Transfer
A committee of three persons shall be formed to hold an administrative
hearing prior to the transfer of any prisoner from prison facilities in the
Virgin Islands to stateside prison facilities.

§ 4503-2. Composition of Hearing Committee
The committee shall be comprised of the warden or designee acting as
chairman, one shift supervisor from the prison correction staff who is
familiar with the prisoner and another person who is a member of the staff of
the administrator of the prison.

§ 4503-3 Written notification of hearing; request for postponement
The prisoner shall be given a written notice of the hearing, at least 24 hours
prior to the hearing, which notice shall not only state the time and place of
the hearing, but the reasons the transfer is being contemplated. . . . .

§ 4503-4. Written statement of facts
A written statement of the facts or circumstances relied upon by the Bureau
and upon which it proposes to determine that the inmate should be
transferred shall be presented to the inmate simultaneously with the notice
of hearing.

§ 4503-5. Witnesses; presentation of documentary evidence
The inmate shall be allowed to call witnesses on his behalf and to present any
documentary evidence available to him in an effort to establish that the
transfer is unwarranted, unless the Director of the Bureau, in writing,

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 16

> concludes for any reason that compliance with the above would be disruptive
> to the hearing, would cause an undue burden on the institution's
> administration, would be unduly hazardous to the safety of the institution or
> that compliance would compromise institutional safety or correctional goals.
>
> § 4503-6. . . . .
>
> § 4503-7. Record of proceedings
> A record shall be made of the findings of the committee and the evidence
> relied on to make the findings as well as a statement of the
> recommendations. The record of the proceedings shall be forwarded to the
> Director of the Bureau of Corrections. The Director shall inform the prisoner,
> in writing, of the findings from the hearing and the reasons for the Director's
> decision.

5-401 V.I. Code R. §§ 4503-1-7.

Absent evidence to the contrary, the Court must accept as true that Plaintiff was not

afforded a hearing prior to transfer. However, Third Circuit precedent, which follows

*Meachum v. Fano*, *supra*, and *Montanye v. Haymes*, 427 U.S. 236 (1976), informs the Court

that even though the Rules appear to confer a state-created right to notice and a hearing,

the statutory language found in 5 V.I.C. §§ 4503, 4505, and in the Rules, gives the BOC

Director discretion to transfer a prisoner at any time, for any reason.[9]

In *Montanye*, after prisoner Haymes was removed from his job as a clerk in the

prison law library he circulated a document that eighty-two prisoners signed stating that

they "had been deprived of legal assistance" as the result of his removal. The document was

---

[9] *See, e.g.,* "The Director of Corrections is authorized to enter into agreements . . . when the Director of
Corrections determines," 5 V.I.C. § 4503(c); "for any other good cause as determined by the Director," 5-
401 V.I. Code R. § 4503-9; "The Director of Corrections . . . may transfer an inmate from one institution to
another," 5 V.I.C. § 4505.

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 17

confiscated by prison officials and Haymes was forthwith transferred to another prison.

*Montanye,* 427 U.S. at 238. Reading the state's transfer statute, the Supreme Court found

that the language, "[t]he commissioner shall have the power to transfer inmates from one

correctional facility to another," meant that the commissioner had discretion to transfer a

prisoner at any time for any reason. "The statute imposes no conditions on the

discretionary power to transfer." *Montanye,* 427 U.S. at 243. *See also Olim v. Wakinekona*,

461 U.S. 238, 250 (1983) (holding that "transfer of respondent from Hawaii to California

did not implicate the Due Process Clause directly, and that Hawaii's prison regulations do

not create a protected liberty interest"). Finding similar language in the Virgin Islands Code

and Rules, the Court must recommend that this element of the third cause of action be

dismissed for failure to state a claim.

Plaintiff also alleges that his rights were violated when he was transferred in

retaliation

> for [ ] filing and prosecuting lawsuits against Prison Officials, consulting with
> Senators of the Virgin Islands Legislature (concerning the waste and stealing
> of government funds by BOC Officials), assisting inmates at GGACF [Golden
> Grove] in filing lawsuits against GGACF Administrators; and to willfully
> hinder Plaintiff in the prosecution of litigation attacking his criminal
> conviction, and to willfully deprive Plaintiff of dental care for his dental
> deficiencies, in violation of Plaintiff's 1st, 8th, and 14th amendment U.S.
> Constitution Rights.

 (ECF No. 1-1) at 19 ¶ 51.

To prove that Defendants' retaliated against him for exercising his constitutional

rights, Plaintiff must prove that: (1) his conduct was constitutionally protected; (2) he

suffered "adverse action" at the hands of the defendant; and (3) his constitutionally

protected conduct was a substantial or motivating factor in the decision of the defendant.

*Gerber v. Campbell*, 2016 U.S. Dist. LEXIS 59354 at *16-17 (M.D. Pa. May 3, 2016) (quoting

*Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002)). "Once a prisoner has made his *prima*

*facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence

that it 'would have made the same decision absent the protected conduct for reasons

reasonably related to penological interest.'" *Carter,* 292 F.3d at 158 (quoting *Rauser v.*

*Horn*, 241 F.3d 330, 334 (3rd Cir. 2001)).

      "Prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430

U.S. 817, 821 (1977). "Prison officials may be held liable for retaliatory conduct that was

motivated 'in substantial part by a desire to punish [the prisoner] for exercise of a

constitutional right,' such as filing lawsuits and grievances related to the conditions of

incarceration." *Martin v. Gearhart*, 2017 U.S. App. LEXIS 20031 at *14 (3d Cir. 2017)

(quoting *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000)).

      The record demonstrates several things. First, that he complained—Plaintiff's

Complaint is replete with references to his grievances.[10] Second, the record confirms that

---

[10] *See* ECF No. 1-1 at 28 ¶ 75 ("sent them correspondence"), ¶ 76 ("notified by Plaintiff"); 32 ¶ 85 ("despite Plaintiff's many pleas"); 33 ¶ 86 ("advised them of the conditions"); 34 ¶ 88 ("notified Citrus County Officials"); 35 ¶ 92 ("Plaintiff requested dental assistance"), ¶ 93 ("told Dr. Howard"), ¶ 94 ("Plaintiff (protesting)"); 36 ¶ 98 ("Susan Gibson was called in"); 37 ¶ 99 ("Plaintiff was conversing with Ms. Gibson"); 38 ¶ 100 ("CCA and BOC Officials never responded to Plaintiff's notification . . . however Citrus County responded"), ¶ 103 ("again requested"); 39 ¶ 106 ("formally and verbally corresponded . . . yet all of the defendants ignored Plaintiff's Correspondence"), ¶ 107 ("Plaintiff was consulted by"), ¶ 108 ("Plaintiff notified Dr. Callwood"); 41 ¶ 115 ("Plaintiff complained to Defendants").

Simon v. Mullgrav
1:17-cv-00007
Report and Recommendation
Page 19

Plaintiff has filed several lawsuits. "Since his conviction in 1995, Plaintiff has filed numerous appeals and petitions, both local and federal, arguing ineffective assistance of counsel, the Superior Court's supposed lack of jurisdiction over his trial, violations of his rights under the doctrine of *Brady v. Maryland*, 373 U.S. 83 (1963), and other concomitant issues." *Simon v. Gov't of the Virgin Islands*, 2017 V.I. Supreme LEXIS 43 at * 5 (2017). Third, the record shows that Plaintiff was transferred from the Virgin Islands to Citrus Country in the fall of 2014 and the transfer prevented implementation of Dr. Griffin's dental treatment plan, for which appointments had already been scheduled. (ECF No. 1-1) at 12 and at 24 ¶ 62-64. The transfer also disrupted Plaintiff's ongoing educational and vocational programs. *Id*. at 19 ¶ 54. Accepted as true, the facts support the allegation that Plaintiff's conduct was constitutionally protected and that he suffered an "adverse action."

Plaintiff avers that his protected conduct was a substantial or motivating factor in Defendants' transfer decision but his complaint presents only conclusory statements such as, "to retaliate against prisoner for [ ] filing and prosecuting lawsuits" with no supporting facts. (ECF No. 1-1) at 19 ¶ 51. Because Plaintiff does not demonstrate a causal connection between his constitutionally protected conduct and his transfer, the Court cannot conclude that his constitutionally protected conduct was a substantial or motivating factor in Defendants' transfer decision and will recommend that this element of the third cause of action be dismissed for failure to state a claim.

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 20

Plaintiff states further, that in the transfer process he was not allowed to inventory nor secure his property. He alleges that Golden Grove has a duty to inventory property after a prisoner has been transferred and that the prison must also provide that inventory list to the friend or family member who calls at the prison to collect the transferred prisoner's belongings. Read liberally, Plaintiff's complaint alleges that Golden Grove is not following BOC policy.[11] But, he provides no reference to that policy and the Court was unable to locate such a policy in the Virgin Islands Statutes or in the Virgin Islands Bureau of Corrections Policies & Procedures (provided to the Court by the BOC). Without more, the Court cannot address this element of Plaintiff's third cause of action.

Dissatisfaction with transfer is frequently raised in prisoner pleadings. This is not surprising, as it is not difficult to imagine a prisoner feeling distressed in a process that is necessarily disruptive and very likely uncomfortable. In his pleading, Plaintiff equates his transfer to a kidnapping, describing it as being "abruptly taken out of his cell . . . by armed BOC Corrections Officers . . . without being allowed to secure or inventory his personal properties nor [ ] to call any of his family members." (ECF No. 1-1) at 18 ¶ 49. However, even though the process may be uncomfortable and disruptive, the courts are clear that administrative transfer does not implicate the Eighth Amendment:

> [I]t has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. See, e.g., *Hassain v. Johnson*, 790 F.2d 1420

---

[11] For an example of a policy regarding prisoner property see the Federal Bureau of Prisons policy regarding inmate property, codified at 28 C.F.R. § 553.14. *See also Parrott v. United States*, 536 F.3d 629, 633 (7th Cir. 2008).

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 21

> (9th Cir.1986); *Serrano v. Torres*, 764 F.2d 47 (1st Cir.1985). Even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment. *See, e.g., Government of the Virgin Islands v. Gereau*, 592 F.2d 192, 16 V.I. 87 (3d Cir.1979) (transfer from Virgin Islands to mainland); *Rodriguez—Sandoval v. United States*, 409 F.2d 529 (1st Cir.1969) (transfer from Puerto Rico to Atlanta). In sum, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano*, 427 U.S. 215 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye*, 427 U.S. at 242; *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.1995); *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846, 97 S. Ct. 127, 50 L. Ed. 2d 117 (1976). Simply put, as a legal matter the plaintiff has no constitutional right to choose his prison.

*Njos v. Bureau of Prisons*, 2017 U.S. Dist. LEXIS 86720 at *23-24 (M.D. Pa. June 5, 2017),

(quoting *Crawford v. While*, 2014 U.S. Dist. LEXIS 129337 at *6 (M.D. Pa. Sept. 16, 2014)).

The record indicates that Plaintiff's transfer was administrative, therefore, the Court will

recommend that this element of Plaintiff's third cause of action be dismissed for failure to

state a claim.

**4. Fourth Cause of Action: Discriminatory Application of VIRR's and Transfer**

Plaintiff avers that there were prisoners at Golden Grove who were not selected for

transfer even though they "more readily fell into the criteria for selection to be

transferred." (ECF No. 1-1) at 25 ¶ 66. The language in § 4503-9 of the Rules, upon which

Plaintiff relies, contains the discretion-conferring language *for any other good cause*, to wit:

"Selection of inmates to be transferred may be made by the following criteria and *for any*

*other good cause . . . .*" 5-401 V.I. CODE R. § 4503-9 (emphasis added). "Because it is

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 22

presumed that Congress expresses its intent through the ordinary meaning of its language,

every exercise of statutory interpretation begins with an examination of the plain language

of the statute." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001). The meaning of

§ 5403-9 is clear: the Director has the discretion to select any inmate for transfer. The

Court need not conduct further analysis on this point [12] and will recommend the fourth

cause of action be dismissed for failure to state a claim.

### 5. Fifth Cause of Action: Inadequate Clothing for Weather

"Contractor shall provide to Government Inmates sufficient outer and under

clothing and bedding necessary for climatic conditions. . . ." Contract at 20 ¶ Q.

Plaintiff avers that while housed at Citrus County from September 30, 2014 to

March 14, 2016, his uniform consisted of "scrubs and underwear" and that the indoor and

outdoor temperatures were at a "constant 50 degrees or below." (ECF No. 1-1) at 26 ¶ 71.

He reports that he was allowed to purchase a thermal shirt but was not allowed to wear the

shirt beyond his cell or the "pod area" including when outdoors. *Id.* at 27 ¶ 72.

"Low cell temperatures may satisfy the objective deprivation requirement of an

Eighth Amendment claim if warranted by the surrounding circumstances." *Sampson v.*

*Berks County Prison*, 171 Fed. Appx. 382, 385 (3d Cir. 2006). For example, a prisoner's

---

[12] Also, under the terms of the contract, Citrus County may refuse inmates: "Before the transfer of a Government inmate to the Facility, separate information packets shall be sent by the Government for each Government Inmate to be transferred at least twenty (20) days prior to the time the inmate will be transferred. . . . (ii) After a thorough review of Inmate information packets, Contractor shall provide the Government written notification for inmates found ineligible for placement in the Facility." Contract at 22. This shows that even if a prisoner is selected for transfer by BOC, he may not be accepted by Citrus County.

assertion that the staff failed to provide blankets to protect inmates from extreme cold stated an Eighth Amendment claim. *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996). But a week-long exposure to cold causing headaches, a cold, and numb feet did not state an Eighth Amendment claim even where the inmate was denied a blanket, because the prison physician provided pain medication and the prisoner's numb feet could have been caused by a pre-existing condition. *Freeman v. Miller*, 615 Fed. Appx. 72, 77-79 (3d Cir. 2015).

Where the prisoner presented "unrefuted testimony that ice persistently formed on the walls of the cells," the court in found that the "question of whether the severity of the cold, in combination with the length of time which the inmate had to endure it, was sufficient to violate the Eighth Amendment . . . [was] peculiarly appropriate for resolution by the trier of facts." *Dixon v. Godinez*, 114 F.3d 640, 643-644 (7th Cir. 1996). But where a prisoner alleged that for several days there was poor ventilation in his cell due to a temporarily malfunctioning air conditioner, the court found that the conditions were "not sufficiently severe, protracted, or harmful to constitute cruel and unusual punishment and rise to the level of a violation of the Eighth Amendment." *Rosa-Diaz v. Harry*, 2017 U.S. Dist. LEXIS 15824 at *18, 22 (M.D. Pa. February 22, 2017).

To state an Eighth Amendment claim, a prisoner must show that he was subjected to conditions that "deprive inmates of the minimal civilized measure of life's necessities,"

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 24

*Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), and, at a minimum, allege "deliberate

indifference" by prison officials. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).

Plaintiff claims that over the course of seventeen and a half months he was

subjected to temperatures of fifty degrees and lower and that even though he requested

and was allowed to purchase a thermal shirt, he was not allowed to wear it outside of his

cell and the pod area. He further states that the prison provided no outer-wear even though

he spent time outdoors. (ECF No. 1-1) at 27 ¶ 72. Plaintiff reports that, due to the frigid

temperatures, he suffered headaches, disorientation, numb feelings in his bones and joints,

and had a frequent urge to urinate. *Id*. He further states his complaints, notifying Virgin

Islands and Citrus County officials about the "climactic conditions," went unanswered. *Id*. at

28 ¶ 75.

During the winter months in the Lecanto, Florida area, 2014-2016, the outside

temperature was infrequently below fifty degrees:

| Month | Year | Avg. High | Avg. Low | Precip. |
|-------|------|-----------|----------|---------|
| October | 2014 | 86 | 57 | 3.28 |
| November | 2014 | 74 | 47 | 4.78 |
| December | 2014 | 75 | 46 | 2.66 |
| January | 2015 | 70 | 44 | 3.80 |
| February | 2015 | 69 | 41 | 2.91 |
| March | 2015 | 82 | 56 | 2.77 |
| October | 2015 | 87 | 62 | 0.69 |
| November | 2015 | 84 | 62 | 4.90 |
| December | 2015 | 80 | 58 | 0.93 |
| January | 2016 | 67 | 43 | 3.92 |
| February | 2016 | 74 | 43 | 3.18 |
| March | 2016 | 81 | 55 | 1.82 |

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 25

INVERNESS 3 SE, FL US USC00084289.[13] With this information the Court cannot find that Plaintiff was subjected to extreme (frigid) temperatures while outdoors.

The Court has no facts to counter Plaintiff's claims that temperatures inside the prison were consistently below fifty degrees.[14] Nonetheless, he was allowed to purchase a thermal shirt to wear indoors and complains only of "having to endure frigid temperatures" while in the law library. (ECF No. 1-1) at 27 ¶ 72. On Plaintiff's facts, the Court does not find sufficient evidence that Plaintiff suffered "extreme deprivation" nor that the prison officials acted with "deliberate indifference" that resulted in denial of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. at 347. Therefore the Court will recommend that the fifth cause of action be dismissed for failure to state a claim.

## 6. Sixth Cause of Action: Exorbitant telephone rates and unmonitored attorney calls

Plaintiff avers that Citrus County's telephone call rate of $5.00 - $ 9.00 per fifteen minutes is exorbitant and unconstitutional. (ECF No. 1-1) at 30 ¶ 78.

"Even though prisoners may have a First Amendment right to reasonable telephone use, '[t]here is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls.'" *Boyer v. Taylor*, 2007 U.S. Dist. LEXIS 51159 at *26 (D. Del. July 16, 2007) (quoting *Johnson v. California,* 207 F.3d 650, 656 (9th Cir. 2000)). Further, "the

---

[13] Temperatures measured at the Inverness weather station, INVERNESS 3 SE, FL US USC00084289, approximately twelve miles east of Lecanto.
https://www.ncdc.noaa.gov/cdoweb/datasets/GHCND/stations/GHCND:USC00084289/detail. Accessed February 28, 2018.
[14] In their answer, CCA replied: "Denied." Defendant Corrections Corporation of America's Answer, Affirmative Defenses, and Demand for Jury Trial (ECF No. 4) at 3.

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 26

First Amendment does not require 'that the government provide telephones, videoconferencing, email, or any of the other marvelous forms of technology that allow instantaneous communication across geographical distances; the First Amendment is a limit on the exercise of governmental power, not a source of positive obligation.'" *Aguiar v. Recktenwald*, 2015 U.S. Dist. LEXIS 137031 at *18 (M.D. Pa. July 28, 2015) (quoting *Holloway v. Magness*, 2011 U.S. Dist. LEXIS 6190 at *27 (E.D. Ark. January 21, 2011). Accordingly, the court will recommend that this element of Plaintiff's sixth cause of action be dismissed for failure to state a claim.

Plaintiff also alleges that while housed at Citrus County he was not allowed to make any "unmonitored telephone calls to his attorney." (ECF No. 1-1) at 29-30 ¶ 78. He avers that other Virgin Islands prisoners, "who did not file any grievances" were allowed unmonitored telephone contact with their attorneys and he believes that Defendants' did not allow him this contact "as a means to retaliate against Plaintiff for filing grievances." *Id*. ¶¶ 78-79. Movants must recite grounds for relief with "more than labels and conclusions." *Bell Atlantic*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679. Plaintiff provides no facts to support his conclusion that he was transferred for filing lawsuits and grievances, therefore the Court will recommend that this element of Plaintiff's sixth cause of action be dismissed.

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 27

**7. Seventh Cause of Action: Inadequate Cell Lighting**

Plaintiff contends that he suffered sleep deprivation, "irritability, headaches, eyestrain, fatigue, and difficulty concentrating" as a result of 24-hour cell lighting, causing him "psychological and physiological harm." (ECF No. 1-1) at 32 ¶ 85. He avers that "despite Plaintiff's many pleas to the Defendants," the cell lighting was not adjusted. *Id.*

A policy of 24-hour illumination may support an Eighth Amendment violation. *See LeMaire v. Maass*, 745 F. Supp. 623, 636 (D. Or. 1990) (finding that "there is no legitimate penological justification for requiring plaintiff to suffer physical and psychological harm by living in constant illumination"); *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985) (holding that "[a]dequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment); *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (claim that constantly illuminated cell prevented inmate from distinguishing between night or day presented "disputed issue of material fact not subject to summary judgment").

However, courts must make factual determinations with respect to whether lighting violates a prisoners rights. *See Spencer v. Wetzel*, 2014 U.S. Dist. LEXIS 34583 (M.D. Pa. March 17, 2014) (low-wattage illumination for security purposes is permissible); *Williams v. Superintendent Dallas SCI*, 599 Fed. Appx. 421 (3d Cir. 2015) (finding that lights in cell turned on between the hours of 6:00 a.m. and 12:00 a.m. and turned off for the remainder of the night was not "objectively serious enough to warrant inquiry"); *Stewart v. Beard*, 417

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 28

Fed. Appx. 117, 120 (3d Cir. 2011) ("constant low intensity lighting, when justified by

legitimate penological concerns, does not violate the Eighth Amendment").

In addition to facts that show that a prison's illumination is unreasonable and not

supported by legitimate penological justifications, Third Circuit courts "require medical

evidence that the lighting caused the alleged harm." *Cadet v. Owners of Berks Cty. Jail*, 2017

U.S. Dist. LEXIS 170235 at *12 (E.D. Pa. October 13, 2017) (quoting *McKeithan v. Kerestes*,

2014 U.S. Dist. LEXIS 102570 at *5 (M.D. Pa. July 28, 2014) ("plaintiff 'failed to demonstrate

that he suffered any cognizable injury from the lights'") and citing *Sims v. Piazza* 462 F.

App'x 228, 233 (3d Cir. 2012) ("medical records did not corroborate that the red light was

the actual cause of his ailments").

Plaintiff alleges that he was subject to constant illumination and that his complaints

that the lights were causing him "irritability, headaches, eyestrain, fatigue, and difficulty

concentrating" were ignored. (ECF No. 1-1) at 32 ¶ 85. Plaintiff does not provide medical

evidence that the 24-hour lighting caused him harm. Though Defendants CCA answered

Plaintiff's Complaint, they provide no contrary evidence to Plaintiff's allegations.[15]

Additional information is required to determine if the lighting was reasonable, whether

Plaintiff's alleged harm is supported with medical evidence, and whether Defendants acted

with deliberate indifference. Accordingly, the Court will recommend that Plaintiff's seventh

cause of action be dismissed without prejudice.

---

[15] "Denied." Defendant Corrections Corporation of America's Answer, Affirmative Defenses, and Demand for Jury Trial (ECF No. 4) at 3.

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 29

**8. Eighth Cause of Action: Lack of Vocational / Educational Programs**

Plaintiff alleges that his rights to due process were violated because he was

transferred to a prison that provides no vocational or educational services. (ECF No. 1-1) at

¶ 54, 87. Plaintiff's plain reading of the statute is correct: "[T]he Director of Corrections

shall ascertain and insure the availability of educational and/or vocational programs at the

institution they are to be transferred to for the purpose of enabling such inmates to gain

marketable skills, and provided further that no inmate is to be transferred to any

institution lacking any such program(s)." 5 V.I.C. §4503(c). However, "[t]here is no

requirement that the programs be comparable, nor [is there a directive to] promulgate

rules that ascertain that one institution's programs are more or less effective at making an

inmate marketable than another institution's programs." *Smith v. Stridiron*, 2008 U.S. Dist.

LEXIS 107739 at *9-10 (D.V.I. February 27, 2008).

Plaintiff states that Citrus County offers only a GED program and he does not need

that because he has a high school diploma. He also makes reference to conducting research

the prison's law library. (ECF No. 1-1) at 27 ¶ 72. So, it is inaccurate to state that Citrus

County offers no opportunity for education when the prison in fact offers some

opportunity, just not the opportunities Plaintiff would like. Plaintiff states that he was

taking a history class and working in the law library while incarcerated at Golden Grove

and that he was looking forward to being able to take other courses, get other jobs, and

gain additional skills. (ECF No. 1) at ¶ 54. The unavailability of a particular educational

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 30

opportunity or job does not equate with "a drastic change in the conditions of confinement." *See Martinez,* 2014 U.S. Dist. LEXIS 182899 at *25. Like the appellant in *Smith v. Stridiron*, Plaintiff's "desire to seek educational opportunities tailored to his aspirations are well-placed [but] the statute cannot be interpreted to create procedures nor objective criteria that are not within its text." 2008 U.S. Dist. LEXIS 107739 at *10. Finally, in Plaintiff's application for *in forma pauperis* status, he indicates that he is housed at Citrus County and that he has a job. (ECF No. 41) at 1. Accordingly, the Court will recommend that Plaintiff's eighth cause of action be dismissed for failure to state a claim.

### 9. Tenth Cause of Action: Virgin Islands Tort Claims Act

The Virgin Islands Tort Claim Act action for personal injury "caused by the tort of an officer or employee of the Government of the United States Virgin Islands while acting as such officer or employee," requires a movant to file their notice or complaint within ninety days "after the accrual of such claim." 33 V.I.C. § 3409(c). Plaintiff alleges his claim arose on or about September 30, 2014 and continued until about March 16, 2016. (ECF No. 1-1) at 14-15 ¶¶ 38, 41. He filed his Complaint with the Superior Court on October 31, 2016. The Court will therefore recommend that Plaintiff's tenth cause of action be dismissed as time-barred.

### V. CONCLUSION

Based upon the foregoing, it is now hereby **RECOMMENDED** that

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 31

1. All claims against Defendants Government of the Virgin Islands; John P. DeJongh, Jr., Governor, United States Virgin Islands; Kenneth E. Mapp, Governor, United States Virgin Islands; Vincent Frazer, Esq., Attorney General, United States Virgin Islands; Dwayne Benjamin, Assistant Director, USVI Bureau of Corrections; Defendant Donald Redwood, Warden, Golden Grove Adult Correctional Facility; and Natasha Metcalf, Vice President, Corrections Corporation of America be **DISMISSED** for failure to state a claim;

2. Plaintiff's First Cause of Action, "Negligent Delegation of Authority," be **DISMISSED** for failure to state a claim;

3. Plaintiff's Second Cause of Action, "Kidnap and False / Illegal Imprisonment," be **DISMISSED** as frivolous;

4. Plaintiff's Third Cause of Action, "Arbitrary, Capricious and Retaliatory Transfer," be **DISMISSED** for failure to state a claim;

5. Plaintiff's Fourth Cause of Action, "Discriminatory Application of VIRR's and Transfer," be **DISMISSED** for failure to state a claim;

6. Plaintiff's Fifth Cause of Action, "Inadequate Clothing for Weather," be **DISMISSED** for failure to state a claim;

7. Plaintiff's Sixth Cause of Action, "Exorbitant telephone rates and unmonitored attorney calls," be **DISMISSED** for failure to state a claim;

*Simon v. Mullgrav*
1:17-cv-00007
Report and Recommendation
Page 32

8.  Plaintiff's Seventh Cause of Action, "Inadequate Cell Lighting," be **DISMISSED without prejudice**;

9.  Plaintiff's Eighth Cause of Action, "Lack of Vocational / Educational Programs," be **DISMISSED** for failure to state a claim;

10. Plaintiff's Ninth Cause of Action, "Deliberate Indifference to Dental Needs," **PROCEED** against Defendants Dennis Howard, Dentist for Corrections Corporation of America; Russell Washburn, Warden, Citrus County Detention Center; Corrections Corporation of America; Linda Callwood, Medical Director, USVI Bureau of Corrections; and Julius Wilson and Rick Mullgrav, Directors, USVI Bureau of Corrections;

11. Plaintiff's Tenth Cause of Action, "Virgin Islands Tort Claims Act," be **DISMISSED** as time-barred.

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. 28 U.S.C. § 636(b)(1); LRCi 72.3.

ENTER:


Dated: March 7, 2018                    /s/ George W. Cannon, Jr.
                                        GEORGE W. CANNON, JR.
                                        MAGISTRATE JUDGE