## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **CARL SIMON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 2017-0007** |
| **RICK MULLGRAV, DWAYNE BENJAMIN,** | ) | |
| **LINDA CALLWOOD, RUSSEL WASHBURN,** | ) | |
| **JULIUS WILSON, DONALD REDWOOD,** | ) | |
| **JOHN P. DEJONGH, JR., KENNETH E.** | ) | |
| **MAPP, VINCENT FRAZER, CORRECTIONS** | ) | |
| **CORPORATION OF AMERICA,** | ) | |
| **GOVERNMENT OF THE VIRGIN ISLANDS,** | ) | |
| **NATASHA METCALF, DENNIS HOWARD,** | ) | |
| **and OTHERS UNKNOWN,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ————————————————— | ) | |

**Appearances:**
**Carl Simon,** *Pro Se*

**Kevin A. Rames, Esq.,**
St. Croix, U.S.V.I.
        *For Defendants Russell Washburn, Natasha Metcalf,*
        *Dennis Howard, and Corrections Corporation of America*

## <u>MEMORANDUM OPINION</u>

**Lewis, Chief Judge**

THIS MATTER comes before the Court on a Report and Recommendation ("R&R")

issued by Magistrate Judge George W. Cannon, Jr., pursuant to 28 U.S.C. § 1915(e)(2) and 28

U.S.C. § 1915A (Dkt. No. 45) and Carl Simon's ("Plaintiff") Objections thereto (Dkt. No. 56).

Also before the Court is Plaintiff's "Motion for Hearing" (Dkt. No. 57).

In his R&R, the Magistrate Judge recommends that all claims against Defendants the

Government of the Virgin Islands; John P. deJongh ("deJongh"); Kenneth E. Mapp ("Mapp"),

Vincent Frazer ("Frazer"), Dwayne Benjamin ("Benjamin"), Donald Redwood ("Redwood"), and

Natsha Metcalf ("Metcalf") be dismissed. (Dkt. No. 45 at 31). He recommends that Counts 1, 3, 4, 5, 6, and 8 be dismissed for failure to state a claim; Count 2 be dismissed as frivolous; Count 7 be dismissed without prejudice because, in the Magistrate Judge's view, additional information was required in order to make a ruling; and Count 10 be dismissed as time-barred. *Id*. at 31-32. In addition, the Magistrate Judge recommends that Count 9 proceed against Dennis Howard ("Howard"), Russel Washburn ("Washburn"), Linda Callwood ("Callwood"), Julius Wilson ("Wilson"), and Rick Mullgrav ("Mullgrav"). *Id*. at 32.

For the reasons that follow, the Court will adopt the Magistrate Judge's R&R in part as modified herein and reject it in part. Specifically, the Court will adopt the R&R to the extent that it will dismiss Counts 1, 3 (in part), 5, 6 (in part), 7 (in part), and 8 for failure to state a claim; dismiss Count 2 as frivolous; and dismiss Count 10 as time-barred. The Court will also dismiss the breach of contract claims set forth in Counts 5 and 9—and any other intended breach of contract claim—for lack of standing. On the other hand, the Court will reject the Magistrate Judge's recommendation to dismiss Counts 3 (in part), 4, 6 (in part), and 7 (in part) and to allow Count 9 to proceed. The Court will also afford Plaintiff up to and including May 28, 2021 within which to file an Amended Complaint that addresses the deficiencies that the Court has found in Counts 1, 3 (in part), 5 (in part), 6, 7, 8, 9 (in part), and 10. In addition, the Court will deny Plaintiff's "Motion for Hearing" (Dkt. No. 57).

## I.    BACKGROUND

Plaintiff is a prisoner of the U.S. Virgin Islands Bureau of Corrections ("BOC") who was transferred from the Golden Grove Adult Correctional Facility ("Golden Grove") on St. Croix, U.S. Virgin Islands to the Citrus County Detention Facility ("CCDF") in Citrus County, Florida. (Dkt. No. 1-1 ¶¶ 31-32). According to Plaintiff, Defendants deJongh, Frazer, and Wilson initiated

this transfer pursuant to a Contract for Professional Services ("Contract"), which failed to ensure that CCDF would provide "adequate dental care, jobs, vocational/educational programs, work release, furlough, classification, enhancement of acquired marketable skills, unmonitored attorney telephone calls and visitation programs in compliance with Virgin Islands law and provide the Plaintiff/V.I. prisoners with the applicable procedures to obtain and utilize these incentives." *Id.* ¶¶ 32-34. Plaintiff claims that he sent correspondence to Defendants deJongh, Frazer, and Wilson explaining that CCDF was not providing him with these "incentives," which they have allegedly ignored and taken no steps to rectify. *Id.* ¶ 35.

Plaintiff also argues that CCDF did not allow him to wear sufficiently warm clothing for the "chilly" weather in Florida. *Id.* ¶¶ 71-77. He further alleges that Defendants Wilson, Washburn, and other Corrections Corporation of America ("CoreCivic") agents and employees did not allow him to make "unmonitored calls" to his attorney regarding his criminal convictions and his conditions of confinement, *id.* ¶ 78, and that the "exorbitant" cost between $5.00 and $9.00 per fifteen minutes to make phone calls made it "virtually impossible" for him to communicate with his friends and family, *id.* ¶ 83.

Additionally, Plaintiff alleges that CCDF did not provide satisfactory vocational or educational programs. *Id.* ¶¶ 87-89. Plaintiff further asserts that when he was housed at CCDF, he was exposed to lighting in his cell for twenty-four hours per day, as a result of which he has suffered "deprivation of adequate sleep, irritability, headaches, eyestrain, fatigue, [and] difficulty concentrating and sleeping . . . ." *Id.* ¶ 85. Finally, Plaintiff claims that he has suffered because of a lack of timely and adequate dental services. *Id.* ¶¶ 90-91, 93.

After Plaintiff filed his *pro se* Complaint in the Superior Court of the Virgin Islands, Defendants CoreCivic, Washburn, and Metcalf removed the action to this Court. (Dkt. No. 1).

3

## II.   APPLICABLE LEGAL PRINCIPLES

### A.   Standard of Review

Parties may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."). When a party makes a timely objection, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Here, Plaintiff filed timely objections to the R&R after receiving two thirty-day extensions of time within which to do so. (Dkt. Nos. 48, 51, 53, 56). Accordingly, a *de novo* review of the R&R is appropriate.

### B.   Other Legal Principles

The evaluation of motions to proceed *in forma pauperis* under 28 U.S.C. § 1915 involves a two-step process. *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3rd Cir. 1990). "First, the district court evaluates a litigant's financial status and determines whether (s)he is eligible to proceed *in forma pauperis* under § 1915(a). Second, the court reviews the complaint under [§ 1915(e)(2)] to determine whether it is frivolous." *Id*. (citing *Sinwell v. Shapp*, 536 F.2d 15 (3rd Cir. 1976)); *Schneller v. Abel Home Care, Inc.*, 389 Fed. App'x 90, 92 (3rd Cir. 2010). Only after a plaintiff's request to proceed *in forma pauperis* is granted may a court consider whether to dismiss the complaint as legally frivolous or for failure to state a claim upon which relief may be granted. *See Jackson v. Brown*, 460 Fed. App'x 77, 79 n.2 (3d Cir. 2012); *see also Spuck v. Fredric*, 415 F. App'x 358, 359 (3d Cir. 2011) ("When a complaint is submitted along with an [*in forma pauperis*]

application, the complaint is not deemed filed unless and until [*in forma pauperis*] status is granted

. . . . In that situation, the District Court must first rule on the [*in forma pauperis*] application and,

only if it grants the application, proceed to determine whether the complaint should be dismissed

under 28 U.S.C. § 1915(e)(2)(B).").

Here, Plaintiff's *in forma pauperis* application has been granted. (Dkt. Nos. 41, 42).

Therefore, the Court may review Magistrate Judge Cannon's conclusions as to whether Plaintiff's

Complaint is subject to dismissal. Section 1915(e)(2)(B) provides as follows:

> "[T]he court shall dismiss the case at any time if the court determines that the action
> or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief
> may be granted; or (iii) seeks monetary relief against a defendant who is immune
> from such relief."

Additionally, for prisoners—like Plaintiff—who seek relief from "a governmental entity or [its]

officer or employee," 28 U.S.C. § 1915A provides a screening process to separate cognizable

claims from those lacking merit. Like § 1915(e)(2), the screening process of § 1915A targets

claims that are "frivolous, malicious, or fail[ ] to state a claim upon which relief may be granted;

or . . . seek[ ] monetary relief from a defendant who is immune from such relief." 28 U.S.C. §

1915A.

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), an action is frivolous "when it lacks an arguable

basis either in law or fact." *Jean-Pierre v. B.O.P.*, 301 F. App'x 124, 127 (3d Cir. 2008) (citing

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). Under the frivolous standard, a complaint should

be dismissed "only if the petitioner cannot make any rational argument in law or fact which would

entitle him or her to relief . . . ." *Williams v. Faulkner*, 837 F.2d 304, 307 (7th Cir. 1988). Unless

there is "indisputably absent any factual or legal basis" for the wrong asserted in the complaint,

the trial court, "[i]n a close case," should permit the claim to proceed at least to the point where

responsive pleadings are required. *Neitzke*, 490 U.S. at 323 (internal quotations and citation omitted).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). The Third Circuit, through *Connelly v. Lane Const. Corp.*, follows the analysis established by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when dismissing under Rule 12(b)(6):

> Under the pleading regime established by *Twombly* and *Iqbal,* a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal,* 556 U.S. at 675, 129 S. Ct. 1937. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S. Ct. 1937. *See also Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679, 129 S. Ct. 1937.

*Connelly*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) (footnote omitted).

Accepting all well-pleaded factual allegations as true, courts must "construe the complaint in the light most favorable to the plaintiff . . . ." *Advanced Rehab., LLC v. United Health Group, Inc.*, 498 Fed. App'x. 173, 176 (3d Cir. 2012) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)) (quotations omitted). "A district court may grant the motion to dismiss only if . . . it determines that plaintiff is not entitled to relief under any reasonable reading of the complaint." *Acosta v. Hovensa, LLC*, 53 V.I. 762, 771 (D.V.I. 2010) (citing *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (internal quotations and brackets

omitted)). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991)). At the Rule 12(b)(6) stage, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus.*, *Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

## II.    DISCUSSION

### A.    Standing

Plaintiff asserts that he can bring a breach of contract claim as a "third party beneficiary" to the Contract between Golden Grove and CCDF. (Dkt. No. 1-1 at 47). The Court finds that Plaintiff lacks standing to bring such a claim.[1]

In addition to the parties to a contract, "third party beneficiaries" of the contract can also enforce its terms. *Doe v. Pennsylvania Bd. of Prob. & Parole*, 513 F.3d 95, 106-07 (3d Cir. 2008). Both Virgin Islands and federal courts look to the Restatement of Contracts definition of third party beneficiaries. *Id.* at 106 (citing *Owens v. Haas*, 601 F.2d 1242, 1250 (2d Cir. 1979), *cert. denied*, 444 U.S. 980 (1979)); *Lawaetz v. Hamm*, 2020 WL 1875262, at *9 (V.I. Super. Ct. Apr. 3, 2020); *Halliday v. Great Lakes Ins. SE*, 2019 WL 3500913, at *14 (D.V.I. Aug. 1, 2019).

---

[1] The issue of standing is a jurisdictional matter. *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Federal courts have a "continuing obligation to assure that [they] have jurisdiction," and thus are required, if necessary, to raise the issue of standing *sua sponte*. *Wayne Land & Min. Grp., LLC v. Delaware River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) (quoting *Seneca Res. Corp. v. Township of Highland*, 863 F.3d 245, 252 (3d Cir. 2017) (citation and internal quotations omitted)).

Section 302 of the Restatement states:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302 (1979). Thus, there are two bases from which the conclusion can be drawn that an individual is a third party beneficiary. *Doe*, 513 F.3d at 107. The first basis stems from the parties indicating in the agreement itself that the third party is a beneficiary. *Id*. The second basis does not require that the purported beneficiary be referenced in the contract, but rather that circumstances compel the court to recognize such a status in order to effectuate the intention of the parties. *Id*.

The first basis offers Plaintiff no relief, because the Contract does not specifically indicate that Plaintiff, or any inmate for that matter, is a third party beneficiary.

Plaintiff fares no better under the second basis. Here, the "intentions of the parties" must be discerned from the document itself. *Langer v. Monarch Life Ins*. Co. 879 F.2d 75, 81 n.8 (3d Cir. 1989) (citations omitted). The parties to the Contract have set forth their intentions quite clearly. The Contract speaks of, among other things, the ongoing need of an off-island facility to house Virgin Islands inmates; cooperation between the Virgin Islands and Florida; and the control and supervision of inmates. There is no compelling evidence that, by entering into the Contract, the Virgin Islands and Florida intended to give legally enforceable rights to Plaintiff.

8

In short, Plaintiff and similarly situated inmates are not third party beneficiaries of the Contract. The Court's conclusion here is consistent with conclusions reached by other courts within the Third Circuit when presented with similar third party beneficiary issues involving prisoners and contracts into which their respective institutions have entered.  *See, e.g.*, *Brown v. Wexford Health Sources, Inc.*, 2018 WL 3156856, at *13 (W.D. Pa. June 28, 2018) (holding that there was neither an express contractual intent to make the plaintiff a third party beneficiary nor any compelling circumstances to warrant a finding that the plaintiff had third party beneficiary standing); *Zeigler v. Correct Care Sys.*, 2018 WL 1470786, at *4 (M.D. Pa. Mar. 26, 2018); *Brown v. Sadowski*, 2009 U.S. Dist. LEXIS 62718 at *13, 2009 WL 2182604 at *5 (D.N.J. July 20, 2009) ("Plaintiff has no standing to seek enforcement of any duties his prison officials might owe to the state, since Plaintiff is not an expressly designated third party beneficiary of the contracts, if any, that the state might have with the prison officials.") (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)).

Accordingly, the Court will dismiss the breach of contract claims set forth in Counts 5 and 9—and any other intended breach of contract claims pursued under the Contract—for lack of standing.

**B.      Count 1—Alleged Negligent Delegation of Authority**

In Count 1 of the Complaint, Plaintiff alleges that Defendants deJongh, Frazer, Redwood, and Wilson "negligently delegated the authority of the Director of BOC, without securing Plaintiff's Territorial and Federal" rights. (Dkt. No. 1-1 at 42). In making this argument, Plaintiff asserts that the Contract which effectuated his transfer from Golden Grove to CCDF failed to account for inmate rights and ensure, *inter alia*, that CCDF would provide adequate access to the courts and that adequate medical care would be available. *Id*.  The Magistrate Judge recommends

that Count 1 be dismissed for failure to state a claim (Dkt. No. 45 at 10) and Plaintiff objects (Dkt.

No. 56 at 14).

While Plaintiff suggests otherwise, the Contract was validly entered pursuant to 5 V.I.C.

§ 4503, which states:

> The Director of Corrections is authorized to enter into agreements to use correctional facilities of any state or local government or private correctional entity located in the United States, its territories, possessions, commonwealths or the District of Columbia, which are accredited by the American Correctional Association, when the Director of Corrections determines that detention and/or correctional facilities within the Virgin Islands are inadequate to serve the best interest of the inmate or the general interest or welfare of the Territory; provided that as a condition of and prior to the transfer of any inmates, the Director of Corrections shall ascertain and ensure the availability of educational and/or vocational programs at the institution they are to be transferred to for the purpose of enabling such inmates to gain marketable skills, and provided further that no inmate is to be transferred to any institution lacking any such program(s).

5 V.I.C. § 4503(c). Additionally, contrary to Plaintiff's assertion, the Contract was entered

pursuant to Virgin Islands procurement procedures, codified at 31 V.I.C. § 239. Here, the

Government of the Virgin Islands Department of Property and Procurement negotiated the

Contract, the Director of the Virgin Islands Bureau of Corrections signed it, and the Governor of

the Virgin Islands approved it. (Dkt. No. 3-3).

Further, while Plaintiff alleges that the Contract fails to address inmate rights, adequate

access to the courts, medical care, and how inmates are selected for transfer, the Contract does in

fact address all of those issues. As the R&R states, there are sections of the Contract that

specifically account for inmate rights, constitutionally required access to the courts, medical care

in accordance with American Correctional Association (ACA) standards, and selection for

transfer. (Dkt. No. 45 at 8-10).

The Court thus finds that Plaintiff has failed to state a claim on Count 1 because the

Director acted pursuant to a valid contract. Although Plaintiff has objected to the Court's

10

consideration of the Contract itself, the Court finds that when considering whether a plaintiff has failed to state a claim upon which relief can be granted, a Court may consider "an undisputedly authentic document . . . if the plaintiff's claims are based on the document," such as a contract. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Am. Corporate Soc'y v. Valley Forge Ins. Co.*, 424 F. App'x 86, 88-89 (3d Cir. 2011). There has been no challenge to the authenticity of the Contract.

Accordingly, the Court will adopt the Magistrate Judge's recommendation to dismiss Count 1 for failure to state a claim. "*[I]n forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Thus, the Court shall afford Plaintiff up to and including May 28, 2021 within which to file an Amended Complaint.

### C.    Count 2—Alleged Kidnap and False/Illegal Imprisonment

In Count 2 of the Complaint, Plaintiff claims that Defendants Mullgrav, Benjamin, Washburn, Wilson, Redwood, deJongh, Mapp, CoreCivic, and Metcalf kidnapped him and illegally imprisoned him at CCDF. (Dkt. No. 1-1 at 43-44). Specifically, Plaintiff argues that he was kidnapped and illegally imprisoned because his transfer did not take place pursuant to a valid contract. *Id*. However, the Magistrate Judge located the Contract under which the Virgin Islands BOC, CoreCivic, and CCDF were operating at the time of Plaintiff's transfer. (Dkt. No. 45 at 6-7).[2] Based on this contract, the Magistrate Judge recommends that the Court dismiss Count 2, *id*., to which Plaintiff objects (Dkt. No. 56 at 16-17).

---

[2]  The Magistrate Judge obtained this contract from the USVI Department of Property & Procurement website at https://dpp.vi.gov/contracts/citrus-county-detention-facility on February 21, 2018.

There is nothing in the record to support Plaintiff's conclusory and unsubstantiated assertion that the Contract was "illegal." (Dkt. Nos. 46 at 10, 56 at 16). In considering whether Plaintiff has stated a claim upon which relief can be granted, the Court need not consider such bald assertions. *See also Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 170 F. App'x 805, 808 (3d Cir. 2006) (concluding that courts need not consider "bald assertions and legal conclusions" such as that the defendant "breached" and "revoked" a contract when determining whether a plaintiff fails to state a claim under Rule 12(b)(6)). Because there is no arguable basis in law or fact that Plaintiff was kidnapped and illegally imprisoned, the Court will adopt the Magistrate Judge's recommendation that Count 2 be dismissed as frivolous. (Dkt. No. 45 at 14). The Court finds that amendment in this regard would be futile, and will not afford Plaintiff the opportunity to amend the Complaint to cure this deficiency

### D.    Count 3—Alleged Arbitrary, Capricious, and Retaliatory Transfer

Count 3 alleges that Defendants Wilson and Redwood failed to follow procedures in not affording Plaintiff a hearing when transferring him and that his transfer was retaliatory. (Dkt. No. 45 at 57-58). The Magistrate Judge recommends that Count 3 be dismissed for failure to state a claim (Dkt. No. 45 at 21), to which Plaintiff objects (Dkt. No. 56 at 18-27). The Court will adopt in part and reject in part the Magistrate Judge's recommendation to dismiss Count 3.

The Fourteenth Amendment prohibits a state or territory from depriving "any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV. However, it is well established that the Fourteenth Amendment does not provide a prisoner with a liberty or property interest in remaining in a particular institution. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Moreover, "[t]he Supreme Court has held quite explicitly that unless a statute confers upon a prisoner the right to be incarcerated in a particular prison, the Constitution does not require a

hearing prior to a transfer." *Ali v. Gibson*, 631 F.2d 1126, 1134 (3d Cir. 1980) (citing *Meachum*, 427 U.S. at 215).

Under Virgin Islands law, individuals who are sentenced to a term of imprisonment are placed in the custody and control of the BOC. *See* 3 V.I.C. § 375(a) (providing that the BOC "shall exercise general control over persons arrested, detained, or sentenced by a court of law"). The BOC is administered under the supervision and direction of the Director who "shall organize the [BOC] to provide security, custody and rehabilitation of correctional inmates." 3 V.I.C. § 373(b). In addition to granting the Director with broad authority over inmates, the Legislature also granted the Director with the authority to transfer inmates to other detention facilities pursuant to 5 V.I.C. § 4503.

Here, Plaintiff claims that his transfer from Golden Grove to CCDF was illegal. (Dkt. No. 1-1 at 17-23). In this regard, he alleges that Virgin Islands law provides that a prisoner shall be given a hearing prior to his transfer to any off-island correctional facility. *Id*. at 17. However, there is no such Virgin Islands law, and no Virgin Islands statute that confers the right to be incarcerated in a particular prison. Thus, the Constitution does not require a hearing prior to a transfer. *Ali*, 631 F.2d at 1134 (citing *Meachum*, 427 U.S. at 215). Additionally, the Supreme Court has considered state laws similar to the ones in the Virgin Islands and has concluded that they do not impose conditions—like a hearing—on the discretionary power to transfer. *Montanye v. Homes*, 427 U.S. 236 (1976). Accordingly, the Court finds that Plaintiff has failed to state a claim on Count 3 on this ground. The Court further finds that amending the Complaint would be futile, as the legal authority is clear that Plaintiff was not entitled to a hearing prior to transfer. Accordingly, the Court will not afford Plaintiff the opportunity to amend the Complaint to cure this deficiency.

Plaintiff also claims that he was transferred to CCDF in retaliation for: (1) filing lawsuits against prison officials; (2) assisting other inmates with legal research and the filing of lawsuits; and (3) making comments to visiting Virgin Islands senators.

The Constitution prohibits prison officials—as agents of the government—from retaliating against a prisoner for exercising his constitutional rights. *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) ("Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional.") (internal citations and quotations omitted)). To state a prima facie case for unconstitutional retaliation, a prisoner "must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotations omitted) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

First, Plaintiff claims that his transfer to CCDF was in retaliation for filing lawsuits against prison officials. "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Retaliating against a prisoner for filing complaints violates the prisoner's First Amendment rights. *Mitchell*, 318 F.3d at 530. Here, Plaintiff asserts that at the time of his transfer, he had several law suits pending against BOC officials. (Dkt. No. 1-1 at 19-21, 44-45). The Complaint alleges that this constitutionally protected conduct was a substantial or motivating factor in the decision to transfer Plaintiff. *Id*. Thus, Plaintiff has presented sufficient facts to plead a retaliatory transfer claim and the Court will reject the Magistrate Judge's recommendation to dismiss Count 3 at this preliminary stage for failure to state a claim in this regard.

14

Second, Plaintiff alleges that he was transferred in retaliation for assisting inmates in filing grievances against prison officials. "[P]risoners do not have a freestanding constitutional right to assist other inmates in filing legal claims." *Carter v. McGrady*, 292 F.3d 152, 153-54 (3d Cir. 2002) (citing *Shaw v. Murphy*, 532 U.S. 223 (2001)); *see also Massey v. Holman*, 2019 WL 3997845, at *4 (W.D. Pa. July 23, 2019) ("Inmates do not possess an independent First Amendment right to provide legal assistance to fellow inmates.") (internal quotations omitted) (quoting *Horan v. Collins*, 2016 WL 5030468, at *9 (M.D. Pa. Aug. 8, 2016), *report and recommendation adopted*, 2016 WL 5033234 (M.D. Pa. Sept. 19, 2016)) (collecting cases)).

However, the Third Circuit has found that where prisoner-to-prisoner legal assistance "was both pursuant to [the plaintiff's] job duties [at the prison] and in accordance with prison regulations, [and] was not inconsistent with legitimate penological interests," such assistance "could fall within the limited First Amendment rights that prisoners retain." *Wisniewski v. Fisher*, 857 F.3d 152, 156-57 (3d Cir. 2017). While Plaintiff seems to allege only an independent right to assist other inmates in filing grievances, the Court notes that Plaintiff makes references to having worked at Golden Grove's law library. (Dkt. No. 1-1 at 23). Plaintiff does not, however, allege that assisting other inmates was pursuant to his job duties, in accordance with prison regulations, and not inconsistent with penological interests. Thus, Plaintiff has not alleged that, in assisting inmates in filing grievances against prison officials, he was engaged in constitutionally protected conduct. Accordingly, the Court will dismiss this aspect of Count 3 for failure to state a claim. The Court finds that, in this regard, amendment would not be inequitable or futile and will therefore afford Plaintiff up to and including May 28, 2021 within which to amend this aspect of Count 3.

Third, Plaintiff contends that his transfer was in retaliation for making comments to Virgin Islands lawmakers. These allegations implicate Plaintiff's First Amendment free speech rights

15

because a prisoner retains First Amendment rights as long as those rights do not conflict with his status as an incarcerated person or interfere with the rationally-related government interest in limiting the constitutional right for the management of prisons. *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (holding that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system"). Thus, the Court will reject the Magistrate Judge's recommendation to dismiss Count 3 for failure to state a claim in this regard.

Finally, Plaintiff alleges that Golden Grove has a duty to inventory property after a prisoner has been transferred and that the prison must also provide that inventory list to the friend or family member who contacts the prison to collect the transferred prisoner's belongings. The Magistrate Judge takes issue with the fact that Plaintiff does not allege that such a policy exists and is unaware of such a policy. (Dkt. No. 45 at 20). In Plaintiff's Objections, he indicates that he does not know whether such a Policy exists. (Dkt. No. 56 at 26). Thus, the Court will also dismiss this aspect of Count 3 for failure to state a claim. Because amendment would not be inequitable or futile here, the Court will afford Plaintiff up to and including May 28, 2021 within which to amend this claim.

Based on the foregoing, the Court will adopt in part and reject in part the Magistrate Judge's recommendation to dismiss Count 3 for failure to state a claim.

### E.    Count 4—Alleged Discriminatory Application of Rules

In Count 4 of the Complaint, Plaintiff alleges that inmates who were similarly situated to him were not transferred even though they were eligible to be transferred. (Dkt. No. 1-1 at 46). Plaintiff thus claims that he suffered prejudice as a result of a discriminatory application of the Virgin Islands Rules and Regulations, in violation of the Fourteenth Amendment. *Id*. The

Magistrate Judge recommends that the Court dismiss Count 4 for failure to state a claim (Dkt. No. 45 at 22), to which Plaintiff objects (Dkt. No. 56 at 27-29).

In making his argument, Plaintiff relies on Section 4503-9 of the Virgin Islands Rules, which states that "[s]election of inmates to be transferred may be made by the following criteria and for any other good cause . . . ." 5-401 V.I.R. § 4503-9. Plaintiff contends that he was not transferred for good cause—claiming that his selection was for retaliatory purposes. (Dkt. No. 1-1 at 45-46). Based on these allegations, the Court will reject the Magistrate Judge's recommendation to dismiss Count 4 at this preliminary stage.

### F.    Count 5—Alleged Inadequate Clothing for Winter

In Count 5 of the Complaint, Plaintiff asserts that he suffered injuries because Defendants Wilson, deJongh, Frazer, Washburn and other CoreCivic employees failed to allow him to wear clothing that suited the weather in violation of the Eighth and Fourteenth Amendments. (Dkt. No. 1-1 at 47). The Magistrate Judge recommends that the Court dismiss Count 5 for failure to state a claim, finding that Plaintiff complains only of "having to endure frigid temperatures" while in the law library, and was allowed to purchase a thermal shirt to wear indoors. (Dkt. No. 45at 24-25). Plaintiff objects to this recommendation. (Dkt. No. 56 at 34).

Accepting all well-pleaded factual allegations as true, the Court agrees that Count 5 should be dismissed for failure to state a claim, but for the reasons stated herein. In order to state a claim for an Eighth Amendment violation, a plaintiff must allege facts sufficient to demonstrate both (1) an objectively serious deprivation of an identifiable human need and (2) that a prison official acted with deliberate indifference in effecting the deprivation. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000). Plaintiff has failed to allege sufficient facts to support his constitutional claims.

First, "the deprivation alleged must be, objectively, sufficiently serious, resulting in "the denial of 'the minimal civilized measure of life's necessities.'" *Wilson*, 501 U.S. at 297. Although the Eighth Amendment does not mandate comfortable prisons, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832, (1994). In a challenge to those conditions, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 834 (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

Here, Plaintiff alleges that Defendants violated the Eighth Amendment because they subjected him to temperatures of fifty degrees and under, and the prison provided no outer wear even though he spent time outdoors. (Dkt. No. 1-1 at 25). Plaintiff acknowledges that he was allowed to purchase a thermal shirt, but claims that he was not allowed to wear the thermal shirt when he was outside of his cell or pod area. *Id*. at 26. The Court finds that these allegations are not sufficiently serious to result in the denial of the "minimal civilized measure of life's necessities" and pose a "substantial risk of serious harm." *See Wilson*, 501 U.S. at 297; *Farmer*, 511 U.S. at 834; *see also Mammana v. Federal Bureau of Prisons*, 934 F.3d 368, 373 n.42 (3d Cir. 2019); *Adderly v. Ferrie*r, 419 F. App'x 135, 139 (3d Cir. 2011) (concluding that while the conditions for an inmate who was deprived of clothing, among other things, for seven days were "harsh," the conditions did not constitute a "denial of the minimal civilized measures of life's necessities") (quoting *Williams v. Del*o, 49 F.3d 442, 444-47 (8th Cir. 1995)) (internal quotations omitted); *Trammell v. Keane*, 338 F.3d 155 (2d Cir. 2003) (concluding that an inmate deprived of clothing in a cold cell for several days did not establish an Eighth Amendment violation); *Taylor v. Correct Care Solutions*, 2013 WL 146271 (D. Del. Jan. 14, 2013) (finding no Eighth Amendment violation where an inmate complained of inadequate clothing for inclement weather conditions).

In regard to the second prong of an Eighth Amendment analysis, the Court finds that Plaintiff has failed in part and succeeded in part in asserting that prison officials acted with deliberate indifference here. *Wilson*, 501 U.S. at 298. A prison official acts with deliberate indifference when he actually knows about a deprivation and disregards it. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001). Here, Plaintiff alleges that he asked Defendants Wilson and the administration of CoreCivic if he could wear clothes that suited the weather and that—while they allowed Plaintiff to purchase a thermal shirt—they refused to allow him to wear it outside of his pod area. (Dkt. No. 1-1 ¶ 72). He also alleges that Defendants Mapp, Benjamin, and Mullgrav demonstrated deliberate indifference to his health when they "left [him] to endure the frigid temperatures" at CCDF. *Id*. ¶ 77.

The Court finds that Plaintiff has not alleged sufficient facts to show that Defendants in the Virgin Islands were "knowingly and unreasonably disregarding an objectively intolerable risk of harm" when they did not ensure that Plaintiff could wear clothing that he deemed fit for Florida weather. *Beers-Capitol*, 256 F.3d at 132. This is particularly so because Defendants in the Virgin Islands were not physically present at CCDF and actively refusing to allow him to wear the clothing that he felt he required in order to be comfortable. However, because Plaintiff asserts that he asked Defendants at CCDF if he could wear clothing that allegedly better suited the weather—and they refused to allow him to wear such clothing outside of his pod area—the Court finds that he has sufficiently pleaded the deliberate indifference prong of an Eighth Amendment violation with regard to Defendants in Florida.

Accordingly, the Court finds that Plaintiff has at this stage not pleaded sufficient facts to state a claim in Count 5, and will adopt the Magistrate Judge's recommendation, for the reasons stated herein, to dismiss Count 5 for failure to state a claim. The Court finds that affording Plaintiff

leave to amend his Complaint would not be inequitable or futile. Thus, the Court shall afford Plaintiff up to and including May 28, 2021 within which to file an Amended Complaint.

### G.    Count 6—Alleged Exorbitant Telephone Rates and Unmonitored Attorney Calls

In Count 6 of his Complaint, Plaintiff alleges that he was charged exorbitant telephone rates and was prevented from making unmonitored calls to his attorney in violation of the First, Fourth, and Fourteenth Amendments. (Dkt. No. 1-1 at 48-49). Plaintiff further asserts that Defendants Wilson, deJongh, Frazer, Mapp, Benjamin, Mullgrav, and the Government of the Virgin Islands are liable in their individual and official capacities for "constitutional and common law torts, under the Civil Rights Act and the laws of the V.I." for failing to ensure that Plaintiff was charged reasonable telephone rates and could make unmonitored calls to his attorney. *Id*. at 49. The Magistrate Judge recommends that Count 6 be dismissed for failure to state a claim (Dkt. No. 45 at 25-26), to which Plaintiff objects (Dkt. No. 56 at 35-37).

The constitutional right related to "exorbitant" telephone rates has been described as the right to communicate with people outside prison walls, and "a telephone provides a means of exercising this right." *Almahdi v. Ashcroft*, 310 F. App'x 519, 521-22 (3d Cir. 2009) (citing *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002)). However, prisoners "ha[ve] no right to unlimited telephone use," and reasonable restrictions on telephone privileges do not violate their First Amendment rights. *See, e.g.*, *Washington v. Reno*, 35 F.3d 1093, 1099-1100 (6th Cir. 1994). Although the Third Circuit has not yet considered the issue, it has been universally recognized by other courts that "[t]here is no authority for the proposition that prisoners are entitled to a specific rate for their telephone calls." *See, e.g.*, *Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000), *overruled on other grounds*, 543 U.S. 499 (2005); *see also Holloway v. Magness*, 666 F.3d 1076, 1080 (8th Cir. 2012) (upholding dismissal of inmate's challenge of prison telephone rates);

20

*Arsberry v. Illinois*, 244 F.3d 558, 564 (7th Cir. 2001) (upholding dismissal of inmate's First Amendment, due process, and equal protection claims based upon exorbitant—i.e., being far higher than required to cover the costs involved in providing phone service to inmates—telephone rates).

Here, Plaintiff alleges that he was charged between $5.00 and $9.00 per fifteen minutes to make phone calls, making it "virtually impossible" for him to communicate with his friends and family. (Dkt. No. 1-1 at 29). He further alleges that this is 200% higher than the rates that companies bill for non-inmate calls. *Id*. Based on the well-pleaded allegations of the Complaint, the Court cannot say that the particular rates charged were not exorbitant as a matter of law. Accordingly, the Court will reject the Magistrate Judge's recommendation to dismiss Count 6 for failure to state a claim on this ground.

Plaintiff also argues that while housed at CCDF, he was not allowed to make any unmonitored telephone calls to his attorney. An inmate's ability to communicate with his lawyer is protected by the constitutional right of access to the courts and may implicate the Sixth Amendment right to assistance of counsel in criminal proceedings. *See Aswegan v. Henry,* 981 F.2d 313 (8th Cir. 1992) (analyzing telephone use as an access-to-courts issue); *see also Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 764 (3d Cir. 2018) ("The Supreme Court has recognized that the Sixth Amendment guarantees a "'right to counsel at all critical stages of the criminal process.'") (quoting *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004)). Thus, any such regulation that permits monitoring of Plaintiff's phone calls with his attorney must be reasonably related to a legitimate penological interest in order to be valid. *See Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Prison officials are not free to promulgate regulations or engage in practices that unreasonably deny an inmate unmonitored access to his attorney because "[r]egulations and practices that unjustifiably obstruct such access are invalid." *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir.), *vacated on other grounds*, 688 F.2d 266 (5th Cir. 1982). It is not Plaintiff's burden to show that there was no legitimate penological interest here. *Fontroy v. Beard,* 559 F.3d 173, 177 (3d Cir. 2009) ("Although the Inmates bear the ultimate burden of showing that the DOC's . . . policy is unconstitutional, it is the DOC Officials' burden to demonstrate that a rational connection exists between the policy and a legitimate penological interest."); *Monroe v. Beard,* 536 F.3d 198, 207 (3d Cir. 2008) (stating that the party challenging the regulation bears the burden of showing that it is unreasonable, but the prison must come forward with a legitimate interest justifying the regulation).

In view of the foregoing, the Court finds that Plaintiff has stated a plausible claim with regard to the alleged unmonitored calls being unconstitutional and will reject the Magistrate Judge's recommendation that this aspect of Count 6 be dismissed.

However, the Court finds that Plaintiff has failed to state a claim that Defendants Wilson, deJongh, Frazer, Mapp, Benjamin, Mullgrav, and the Government of the Virgin Islands violated "constitutional and common law torts, under the Civil Rights Act and the laws of the V.I." for failing to ensure that Plaintiff was charged reasonable telephone rates and could make unmonitored calls to his attorney while detained in Florida. This is because Plaintiff refers only to a vague "duty" that Virgin Islands Defendants had to ensure that CCDF provided Plaintiff with "rights to telephone access with reasonable rates, and unmonitored telephone calls to his attorneys . . . ." (Dkt. No. 1-1 at 48). This conclusory and "bare-bones" assertion does not pass muster to survive even this stage of the proceedings. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

22

Because affording Plaintiff leave to amend the Complaint would not be inequitable or futile,[3] the Court will afford Plaintiff up to and including May 28, 2021 within which to amend the claim.

Accordingly, the Court will adopt in part and reject in part the Magistrate Judge's recommendation to dismiss Count 6.

### H.      Count 7—Alleged Inadequate Cell Lighting

In Count 7 of his Complaint, Plaintiff argues that he suffered as a result of constant cell illumination in violation of the Eighth Amendment. (Dkt. No. 1-1 at 49). The Magistrate Judge recommends that Count 7 be dismissed without prejudice, but the Court disagrees.

"[T]he constitutional requirement of adequate shelter for an inmate includes the provision of adequate lighting." *Bacon v. Minner*, 229 F. App'x 96, 100 (3d Cir. 2007) (citing *Hoptowit v. Spellman,* 753 F.2d 779, 783 (9th Cir. 1985)). The Ninth Circuit has noted that "[t]here is no legitimate penological justification for requiring [inmates] to suffer physical and psychological harm by living in constant illumination." *LeMaire v. Maass,* 745 F.Supp. 623, 636 (D.Or. 1990), *vacated on other grounds*, 12 F.3d 1444, 1458-59 (9th Cir. 1993); *see also Keenan v. Hall,* 83 F.3d 1083, 1091 (9th Cir. 1996) (holding that an allegation "that large florescent lights directly in front of and behind [an inmate's] cell shone into his cell 24 hours a day, so that his cell was 'constantly illuminated, and [he] had no way of telling night or day,' and that this condition caused him 'grave sleeping problems' and other mental and psychological problems" was sufficient to state a claim of cruel and unusual punishment).

The Court will reject the Magistrate Judge's recommendation regarding Count 7. When there are well-pleaded factual allegations, a court should assume their veracity and then determine

---

[3] The Court notes, however, that if Plaintiff is simply attempting to attach this claim to the Contract, Plaintiff would lack standing to make such a claim, as discussed above.

whether they plausibly give rise to an entitlement to relief. *Iqbal,* 556 U.S. at 679. Here, Plaintiff has alleged that at CCDF, he was subjected to 24-hour cell lighting, resulting in sleep deprivation, irritability, headaches, eyestrain, fatigue, and difficulty concentrating. (Dkt. No. 1-1 at 31). He has also alleged that he pleaded with Defendants Washburn and CoreCivic employees to "change the cell lighting." *Id*. Thus, the Court finds that Plaintiff has alleged facts sufficient to withstand dismissal at this stage of the proceedings with regard to Defendants in Florida. *Fuentes*, 206 F.3d at 344. Accordingly, the Court will reject the Magistrate Judge's recommendation to dismiss Count 7 as to Defendants in Florida.

However, the Court will adopt the recommendation with regard to Defendants in the Virgin Islands. Plaintiff contends that he advised Defendants Wilson, deJongh, Frazer, Mapp, and the Government of the Virgin Islands of the alleged issue but they did not do anything to address it. *Id*. at 32. While Plaintiff advised those Defendants of the alleged conditions, they were not alleged participants in the purported conduct underlying this cause of action. Because the Court finds amendment here would not be inequitable or futile, the Court will afford Plaintiff up to and including May 28, 2021 within which to amend Count 7 with regard to Defendants in the Virgin Islands.

### I.      Count 8—Alleged Lack of Vocational/Educational Programs

In Count 8 of his Complaint, Plaintiff alleges that his due process rights were violated when Defendants Wilson and the Government of the Virgin Islands transferred him to CCDF, where he was not provided with vocational or educational programs. (Dkt. No. 1-1 at 50). The Magistrate Judge recommends that this Claim be dismissed for failure to state a claim (Dkt. No. 45 at 29-30), to which Plaintiff objects (Dkt. No. 56 at 39-43).

Pursuant to 5 V.I.C. § 4503(c), "the Director of Corrections shall ascertain and ensure the availability of educational and/or vocational programs at the institution they are to be transferred to for the purpose of enabling such inmates to gain marketable skills, and provided further that no inmate is to be transferred to any institution lacking any such program(s)." However, in assessing the viable claims regarding educational and recreational programs among facilities, "[t]here is no requirement that the programs be comparable, nor [is there a directive to] promulgate rules that ascertain that one institution's programs are more or less effective at making an inmate marketable than another institution's programs." *Smith v. Stridiron*, 2008 WL 5632266, at *3 (D.V.I. Feb. 27, 2008); *see also Maxwell v. Stridiron*, 2003 WL 1936135, at *4 (Terr. V.I. Mar. 25, 2003) (rejecting the petitioner's argument that the lack of quality of educational resources at a detention facility renders a transfer unconstitutional).

The Magistrate Judge states that "it is inaccurate to state that Citrus County offers no opportunity for education when the prison [does in fact offer some opportunities], just not the opportunities Plaintiff would like." (Dkt. No. 45 at 30). The Court agrees. Plaintiff references conducting research at CCDF's law library (Dkt. No. 1-1 ¶ 72) and states that he has a job at CCDF (Dkt. No. 41 at 1). Plaintiff also states that CCDF offers a GED program, which he does not need because he already has a high school diploma. (Dkt. No. 1-1 ¶ 72). He explains that he would like to participate in programs similar to the ones he participated in at Golden Grove, such as taking a history class and working at the law library. *Id*. ¶ 72.

While Plaintiff's "desire to seek educational opportunities tailored to his aspirations are well-placed, the statute cannot be interpreted to create procedures nor objective criteria that are not within its text." *Smith*, 2008 WL 5632266, at *3. That is, Plaintiff cannot bring a claim under 5 V.I.C. § 4503 on the grounds that the prison to which he was transferred does not provide

identical programming to that offered at Golden Grove, or that the programming is not tailored to his personal interests. Accordingly, the Court will dismiss Count 8 for failure to state a claim. Because amendment would not be inequitable or futile, the Court will afford Plaintiff up to and including May 28, 2021 within which to amend the claim.

J.    **Count 9—Alleged Deliberate Indifference to Dental Needs**

The Magistrate Judge recommends that Count 9 of Plaintiff's Complaint proceed (Dkt. No. 45 at 14), but the Court disagrees.

In Count 9, Plaintiff alleges that his right to adequate dental care pursuant to the Eighth Amendment of the United States Constitution was violated. Under the Eighth Amendment, the Government must provide adequate healthcare for persons incarcerated, which includes access to a minimal level of dental care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Petrazzoulo v. U.S. Marshals Serv.,* 999 F.Supp. 401, 407 (W.D.N.Y. 1998). However, the complaint must be more than a medical malpractice or negligence allegation in order to rise to an Eighth Amendment violation of the prisoner's rights. *Estelle*, 429 U.S. at 106.

To prove inadequate conditions of confinement under the Eighth Amendment, an incarcerated person must "allege acts or omissions by prison officials that indicate deliberate indifference to a serious medical need." *Williams v. Macut*, 677 Fed. Appx. 40, 40 (3d Cir. 2017) (citing *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003)); *see also West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978) (stating that a violation of the Eighth Amendment for inadequate healthcare "requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious."). Deliberate indifference occurs when the defendant knows of the need for medical care and intentionally refuses to provide it, exposing the inmate to "undue suffering or the threat of tangible residual injury." *Monmouth Cty. Corr. Institutional*

*Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (internal quotations omitted). However, mere disagreement with a prescribed treatment is not an actionable constitutional violation. *Id*.

Plaintiff's Complaint does not allege sufficient facts that would establish that prison officials acted with deliberate indifference. Plaintiff alleges that he saw a dentist prior to his transfer. (Dkt. No. 1-1 at 34). After his transfer, he requested dental assistance from CCDF medical personnel who informed Plaintiff that he may wait up to one year to have a dental screening. *Id*. After notifying prison personnel of his need for dental services, Plaintiff was able to secure a dental appointment with a dentist approximately two months from the date of his initial request. *Id*. The dentist suggested a course of action for his dental care of extracting his cavity-infected teeth, to which Plaintiff refused. *Id*. at 34-36. Plaintiff notified Defendants that he believed that the suggested dental treatment was insufficient. *Id*. at 36-37. In response, CCDF informed Plaintiff that he had been provided a dental examination by a licensed dentist who evaluated him and determined that his ailments can be treated through extractions and medications rather than highly specialized procedures. *Id*. at 37. Plaintiff again refused the proposed course of dental treatment. *Id*.

These allegations do not rise to the level of a plausible claim of deliberate indifference. Although Plaintiff disagrees with the dental treatment offered, mere disagreement with a prescribed treatment is not an actionable constitutional violation. *Monmouth Cty. Corr. Institutional Inmates*, 834 F.2d at 346. There is no indication, based on Plaintiff's allegations, that prison officials were refusing to provide him with dental care or that they sought to impose any harm on him. *James v. Penn. Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007) (per curiam) (extraction of an abscessed tooth was not an Eighth Amendment violation even where another possible treatment was not available pursuant to prison policy); *see also Leachman v. Harris Cty.*,

*Texas*, 779 F. App'x 234, 238 (5th Cir. 2019), *as revised* (Oct. 2, 2019) (concluding that a prisoner

fails to state a claim under the Eighth Amendment based on the jail's provision of "extraction of

his injured teeth" rather than "more expensive restorative treatment.") (quoting *McQueen v. Karr*,

54 F. App'x 406 (5th Cir. 2002)); *Mathews v. Raemisch*, 513 F. App'x 605, 607 (7th Cir. 2013)

(extraction instead of a root canal does not amount to deliberate indifference to a serious medical

need); *Willis v. Washington*, 172 F.3d 54 (7th Cir. 1999) (no Eighth Amendment violation where

prisoner alleged "he was told he either could live with the pain or have his teeth pulled" and argued

"he should have been offered alternatives to extraction").

     Accordingly, the Court finds that Count 9 fails to state a claim and will reject the Magistrate

Judge's recommendation. Because amendment would not be inequitable or futile, the Court will

afford Plaintiff up to and including May 28, 2021 within which to file an Amended Complaint.

### K.    Count 10—Virgin Islands Tort Claims Act

     Plaintiff brings Count 10 under the Virgin Islands Tort Claims Act. Pursuant to 33 V.I.C.

§ 3409(c), personal injuries "caused by the tort of an officer or employee of the Government of

the United States Virgin Islands while acting as such officer or employee," requires a movant to

file their notice or complaint within ninety days "after the accrual of such claim." Plaintiff alleges

his claim arose on or about September 30, 2014 and continued until about March 16, 2016. (Dkt.

No. 1-1 ¶¶ 38, 41). He mailed his Complaint to the Superior Court on September 29, 2016—197

days after the acts giving rise to his claims purportedly ended. (Dkt. No. 1-1 at 57).

     However, pursuant to 33 V.I.C. § 3409(c), a plaintiff may file a tort claim within two years

so long as he files a written notice of intention to file a claim within 90 days or establishes by

affidavit that:

    a reasonable excuse for the failure to file a notice of intention exists; (ii) the Virgin
    Islands Government or its appropriate agency or department had actual knowledge

of the facts constituting the claim prior to the expiration of the 90-day period; and
(iii) the Government of the Virgin Islands has not been substantially prejudiced by
said failure of timely filing within the specified time period.

*Quailey v. Gov't of the Virgin Islands*, 404 F. Supp. 1246, 1248 (D.V.I. 1975).

Although in his Objections Plaintiff suggests that he has "provided" a timely notice of
intent to file a claim (Dkt. No. 56 at 45), his allegations in the Complaint do not provide sufficient
facts to plausibly give rise to the conclusion that the tort claim is timely. The Court finds, however,
that affording Plaintiff leave to amend his Complaint would not be inequitable or futile. Thus,
while the Court will adopt the Magistrate Judge's recommendation to dismiss Count 10 as time-
barred, the Court will also afford Plaintiff up to and including May 28, 2021 within which to file
an Amended Complaint.

### III.    CONCLUSION

Upon the Court's review of the record in this case, the Magistrate Judge's R&R will be
adopted in part as modified herein. Specifically, the Court will dismiss Counts 1, 3 (in part), 5, 6
(in part), 7 (in part), 8, and 9 for failure to state a claim; dismiss Count 2 as frivolous; Count 10 as
time-barred; and the breach of contract claims set forth in Counts 5 and 9—and any other intended
breach of contract claim—for lack of standing. The Court will not dismiss Counts 3 (in part), 4, 6
(in part), or 7 (in part). The Court will also afford Plaintiff up to and including May 28, 2021 within
which to file an Amended Complaint that addresses the failures the Court found in Counts 1, 3 (in
part), 5 (in part), 6, 7, 8, 9 (in part), and 10.

In addition, the Court will deny Plaintiff's "Motion for Hearing" (Dkt. No. 57) because the Court finds that a hearing to address the R&R and Plaintiff's Objections thereto is not necessary.

An appropriate Order accompanies this Memorandum Opinion.

Date:   April 16, 2021                        _____/s/_____
                                              WILMA A. LEWIS
                                              Chief Judge