DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| CARL SIMON, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Civil Action No. 2017-0007 |
| RICK MULLGRAV, DWAYNE BENJAMIN, | ) |
| LINDA CALLWOOD, RUSSELL WASHBURN, | ) |
| JULIUS WILSON, DONALD REDWOOD, | ) |
| JOHN P. DEJONGH, JR., KENNETH E. | ) |
| MAPP, VINCENT FRAZIER, CORRECTIONS | ) |
| CORPORATION OF AMERICA, | ) |
| GOVERNMENT OF THE VIRGIN ISLANDS, | ) |
| NATASHA METCALF, DAVID HOWARD, | ) |
| and OTHERS UNKNOWN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**Appearances:**
**Carl Simon,** *Pro Se*

**Kevin A. Rames, Esq.,**
**Semaj I. Johnson, Esq.,**
St. Croix, U.S.V.I.
   *For Defendants Russel Washburn, Natasha Metcalf,*
   *David Howard, and Corrections Corporation of America*

## MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER comes before the Court on Defendants Russell Washburn ("Washburn"), Natasha Metcalf ("Metcalf"), and Corrections Corporation of America's ("CoreCivic") "Motion to Dismiss and Incorporated Memorandum of Law" (Dkt. No. 3), and Plaintiff Carl Simon's ("Plaintiff") "Motion for Extension of Time," wherein he requests jurisdictional discovery and additional time to respond to the aforementioned Motion to Dismiss (Dkt. No. 37). Also before the

Court is Defendant David Howard's ("Howard")[1] "Motion to Dismiss and Incorporated Memorandum of Law" (Dkt. No. 33) and Plaintiff's Response thereto (Dkt. No. 58).

For the reasons that follow, the Court will grant in part and deny in part Defendants Washburn, Metcalf, and CoreCivic's Motion to Dismiss (Dkt. No. 3); deny Plaintiff's request for jurisdictional discovery and additional time to file a response to Defendants Washburn, Metcalf, and CoreCivic's Motion to Dismiss (Dkt. No. 37); and grant Defendant Howard's Motion to Dismiss (Dkt. No. 33).

## I. BACKGROUND

After Plaintiff filed a 10-count *pro se* Complaint in the Superior Court of the Virgin Islands, Defendants Washburn, Metcalf, and CoreCivic removed the action to this Court. (Dkt. No. 1). Defendants Washburn, Metcalf, and CoreCivic then filed their Motion to Dismiss (Dkt. No. 3) and Defendant Howard filed his Motion to Dismiss (Dkt. No. 33).

Meanwhile, Magistrate Judge George Cannon, Jr., issued a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A (Dkt. No. 45). This Court adopted in part and rejected in part Judge Cannon's R&R as modified in its accompanying Memorandum Opinion, and afforded Plaintiff the opportunity to file an Amended Complaint that addressed certain deficiencies that the Court found in Plaintiff's Complaint. (Dkt. Nos. 66, 67). Plaintiff subsequently filed his "First Amended Complaint" ("Amended Complaint") (Dkt. No. 74), which this Court screened pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A. (Dkt. No. 86). In its September 1, 2021 Order, the Court dismissed the following claims with prejudice: any alleged breach of contract claims made pursuant to the 2015 Contract between the Virgin

---

[1] The Court notes that Howard was improperly named as "Dennis Howard" in Plaintiff's original Complaint (Dkt. No. 1-1), which Plaintiff corrected in his Amended Complaint (Dkt. No. 74).

Islands detention facility where Plaintiff was originally detained and the Florida detention facility to which he was transferred ("2015 Contract"); Count 2—Kidnapping and False Imprisonment; the Eighth Amendment claims made in Count 5—Inadequate Clothing for Weather; and the Eighth Amendment claims made in Count 9—Deliberate Indifference to Dental Needs. *Id*. The Court allowed Plaintiff's remaining claims to proceed. *Id*.

## II.   DISCUSSION

There are two Motions to Dismiss pending before the Court. (Dkt. Nos. 3, 33). Both Motions argue lack of personal jurisdiction—the first challenging the Court's jurisdiction over Defendants Washburn and Metcalf (Dkt. No. 3), and the second challenging the Court's jurisdiction over Defendant Howard (Dkt. No. 33). The Motions to Dismiss also incorporate arguments that the Court should dismiss certain counts against Defendants Washburn, Metcalf, CoreCivic, and Howard for failure to state a claim. (Dkt. Nos. 3, 33).

The Court notes that, since the filing of these Motions to Dismiss, Plaintiff has filed an Amended Complaint (Dkt. No. 74), as permitted by the Court (Dkt. No. 66). Plaintiff's Amended Complaint, by operation of law, has become the operative pleading in this case. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (amended pleadings supersede the original pleading and render the prior pleading a nullity). However, "when a plaintiff properly amends [his] complaint after [a] defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020); *see also Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 641 n.1 (E.D. Pa. 1999) ("Defendants . . . 'are not required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised

in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.'") (quoting 6 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1476 (2nd ed. 1990)). Because the Court finds that Plaintiff's original Complaint (Dkt. No. 1-1) and Amended Complaint (Dkt. No. 74) are similar enough for purposes of resolving the instant motions, the Court will consider the Motions to Dismiss (Dkt. Nos. 3, 33)—which were filed in response to Plaintiff's original Complaint (Dkt. No. 1-1)—as being addressed to the operative Amended Complaint (Dkt. No. 74).

### A. Personal Jurisdiction

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits only to the extent authorized by the law of that state." *Harp v. Koury*, 2013 WL 3153780, at *1 (E.D. Pa. June 21, 2013) (citing, *inter alia, DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 283 (3d Cir. 1981)). This Court has interpreted the Virgin Islands Long-Arm Statute "to apply as widely as constitutional requirements permit, consistent with the intent of the legislature." *Ford v. Amber Cape Prods., LLC*, 2010 WL 3927321, at *3 (D.V.I. Sept. 30, 2010); *see also Jacobs v. Hilton Worldwide Holdings, Inc.*, 2020 WL 5579825, at *2 (D.V.I. Sept. 17, 2020) ("'The Virgin Islands long-arm statute has consistently been construed to authorize the exercise of jurisdiction to the fullest extent permissible under the due process clause.'") (quoting *Buccaneer Hotel Corp. v. Reliance Int'l Sales Corp.*, 17 V.I. 249, 254 (Terr. Ct. 1981); *Bryan v. United States*, 2017 WL 781244, at *9 (D.V.I. Feb. 28, 2017), *aff'd*, 913 F.3d 356, 70 V.I. 1141 (3d Cir. 2019); *Urgent v. Tech. Assistance Bur., Inc.*, 255 F. Supp. 2d 532, 535 (D.V.I. 2003) ("[B]y adopting the Uniform Act, rather than developing its own long-arm statute or adopting the long-arm statute of some other jurisdiction, the Virgin Islands' Legislature likely intended the reach of the Virgin Islands' long-arm statute to be coextensive with the exercise of personal

jurisdiction permitted by the due process clause."). Thus, Virgin Islands law provides for jurisdiction coextensive with that allowed by the Due Process Clause of the Constitution.

Under the Due Process Clause, a court may exercise personal jurisdiction only over defendants who have "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotation marks omitted). "A parallel inquiry is whether the defendants' contacts with the forum state are such that the defendants should 'reasonably anticipate being hauled into court there.'" *Harp,* 2013 WL 3153780, at *2 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A federal district court may exercise personal jurisdiction over nonresident defendants based on either general jurisdiction or specific jurisdiction. "A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." *Metcalfe v. Renaissance Marine, Inc.,* 566 F.3d 324, 334 (3d Cir. 2009) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). On the other hand, specific jurisdiction "exists if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

For the reasons that follow, the Court finds that it has personal jurisdiction over Washburn, and lacks personal jurisdiction over Metcalf and Howard.

**1. Washburn**

Washburn works and resides in Florida. (Dkt. No. 3, Ex. 1). He has traveled to the U.S. Virgin Islands on at least three occasions since 2011 for the purpose of reviewing inmate files that

5

the Bureau of Corrections selected as candidates for transfer to Florida. *Id*. In his Amended Complaint, Plaintiff asserts that Washburn is the Warden of a detention facility in Florida; a shareholder of CoreCivic; and assisted in Plaintiff's transfer. (Dkt. No. 74 at 6).

Here, the Court finds that Plaintiff has sufficiently pleaded that Washburn "purposefully directed" his activities at the Virgin Islands in such a way that Plaintiff's alleged injuries "arise out of or relate to" those activities. *Metcalfe,* 566 F.3d at 334. Plaintiff alleges that Washburn "owes Plaintiff a duty to use due care and caution in the exercise of [h]is job . . . ." (Dkt. No. 74 at 6, ¶ 18). Plaintiff further alleges that "Washburn . . . traveled to St. Croix, [U.S. Virgin Islands,] and selected from the Classification files . . . in violation of [Virgin Islands laws and the Constitution] inmates that he personally and as a representative [of CoreCivic] selected to be . . . transferred to [Florida.]" *Id*. at 13, ¶ 35. Indeed, Washburn concedes that he has travelled to the U.S. Virgin Islands to review and approve which inmates in the Virgin Islands Bureau of Corrections are eligible to be transferred to a detention facility in Florida. (Dkt. No. 3, Ex. 1).

Thus, the Court concludes that it has specific jurisdiction over Washburn because Plaintiff has alleged that his improper transfer was due in part to unlawful conduct by Washburn in the Virgin Islands. *Columbia Briargate Co. v. First Nat. Bank in Dallas,* 713 F.2d 1052, 1064 (4th Cir. 1983) (explaining that specific jurisdiction may exist over an employee—even if the employee is acting on behalf of his or her employer—if the plaintiff alleges that the employee was personally involved in the alleged tort committed in the forum state); *see also Par Pharm., Inc. v. Quva Pharma, Inc*., No. 3:17-CV-6115-BRM-DEA, 2019 WL 356549, at *10 (D.N.J. Jan. 28, 2019) (finding that the court had specific personal jurisdiction over employees who allegedly disclosed a company's trade secrets and solicited a company's employees). The injuries that Plaintiff attributes to Washburn either "arise out of" or "relate" to Plaintiff's alleged improper transfer from

6

the Virgin Islands to Florida, which Plaintiff asserts Washburn played an unlawful role in effectuating. *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (describing specific jurisdiction as present when "the particular cause of action sued upon arose from the defendant's activities within the forum state"). Although not all of Plaintiff's claims against Washburn specifically involve the alleged improper transfer, "[i]t is enough that a meaningful link exists between a legal obligation that arose in the forum and the substance of [Plaintiff's] claims." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 324 (3d Cir. 2007). Here, Washburn's alleged legal obligation that arose in the Virgin Islands involved his participation in the selection of Plaintiff's transfer to a detention facility in Florida. A meaningful link exists between this alleged legal obligation and the substance of Plaintiff's claims because Plaintiff's claims arise out of that alleged improper transfer from a detention facility in the Virgin Islands to a detention facility in Florida, where Plaintiff alleges he was subjected to further injuries, some of which he asserts are attributable to Washburn. In sum, there is a causal connection between Plaintiff's claims against Washburn and Washburn's alleged unlawful conduct in the Virgin Islands. *Id.* at 323.

The Court concludes that exercising personal jurisdiction over Washburn in this regard comports with traditional notions of fair play and substantial justice. Indeed, "the facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice." *Kulko v. Cal. Superior Court*, 436 U.S. 84, 92 (1978)). Factors to consider include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of the controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Law Sch. Admission Council, Inc. v. Tatro*, 153 F. Supp. 3d 714, 721 (E.D. Pa. 2015) (quoting *Burger*

*King Corp.,* 471 U.S. at 477) (internal quotation marks omitted). "When jurisdiction is otherwise constitutional, a defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 354 (E.D. Pa. 2016) (quoting *Burger King Corp.,* 471 U.S. at 476) (internal quotation marks omitted).

Here, Washburn's employment involves travel to the Virgin Islands, where he reviews and approves which inmates are eligible to be transferred to Florida. (Dkt. No. 3, Ex. 1). It is within the Virgin Islands' interest to be able to adjudicate issues which allegedly take place in the Virgin Islands and involve those who the Virgin Islands have in its custody, such as Plaintiff. While the Court acknowledges that there would be some inconvenience to Washburn in having to litigate in the Virgin Islands, the Court also concludes that any such burden is outweighed by Plaintiff's interest in asserting his improper transfer claims in a single forum. Thus, the Court finds that Washburn has not presented a compelling case that would render it unreasonable to exercise specific personal jurisdiction over him.

Accordingly, the Court finds that it has specific personal jurisdiction over Washburn and will therefore deny the Motion to Dismiss the claims against Washburn for lack of personal jurisdiction.

### 2. Metcalf

Metcalf works and resides in Tennessee. (Dkt. No. 3, Ex. 2). She has never traveled to the U.S. Virgin Islands. *Id*. Her only contact with the Virgin Islands is that she has communicated with government officials in the Virgin Islands for purposes of preparing a contract that pertains to housing Virgin Islands inmates in a detention facility in Florida. *Id*. In his Amended Complaint, Plaintiff asserts that Metcalf is Vice President of CoreCivic and is the supervisor for other

CoreCivic employees. (Dkt. No. 74 at 9, ¶ 26). Metcalf represents in her Affidavit that she is employed by CoreCivic as Vice President of Partnership Development. (Dkt. No. 3, Ex. 2).

The Court concludes that Metcalf does not have sufficient minimum contacts with the Virgin Islands to confer general personal jurisdiction. (Dkt. No. 3, Ex. 2). Metcalf has never visited the Virgin Islands. *Id*. Nor does Metcalf conduct any business in the Virgin Islands on her own behalf. *Id*. Indeed, any contact that Metcalf has had with the Virgin Islands has been on behalf of her employer, CoreCivic. *Id*. These contacts alone are insufficient to satisfy due process requirements with regard to general personal jurisdiction. *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) (finding that communications with the forum state in order to draft a contract does not establish sufficient minimum contacts for purposes of general personal jurisdiction); *see also Bangura v. Pennrose Mgmt. Co.*, No. CIV.A.1:09-04017 JEI, 2010 WL 2539419, at *3 (D.N.J. June 15, 2010) ("Both [defendants] supervised employees in [the forum state], and, as such, were required to have contact with [the forum state] for the purposes of fulfilling their professional responsibilities. However, these contacts [are not sufficient to demonstrate general personal jurisdiction.]"). Accordingly, this Court lacks general personal jurisdiction over Metcalf.

Further, the Court finds that it lacks specific jurisdiction over claims against Metcalf because none of Plaintiff's claims that allegedly took place in the Virgin Islands—specifically, Plaintiff's improper transfer claims—are attributed to any unlawful conduct allegedly committed by Metcalf. *Metcalfe*, 566 F.3d at 334 (3d Cir. 2009).[2] The extent of Metcalf's involvement with

---

[2] The Court's specific jurisdiction conclusion regarding Metcalf differs from its conclusion regarding Washburn because Plaintiff has alleged that Washburn, unlike Metcalf, was personally involved in committing an offense aimed at—and in fact in—the Virgin Islands, namely, the selection of Plaintiff for transfer. (Dkt. No. 74 at 13, ¶ 35). "[I]f the complaint sufficiently alleges that the defendants had a direct personal involvement in a tort committed in the forum state, then

Plaintiff's transfer was in the drafting of the contract under which Plaintiff was transferred. (Dkt. No. 3, Ex. 2). However, the Third Circuit has rejected the argument that communications between parties in connection with the drafting of a contract constitute sufficient contacts for purposes of specific personal jurisdiction, even when there is an assertion that the cause of action arises out of the contract. *Sunbelt Corp.*, 5 F.3d at 32 (3d Cir. 1993) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir.1985) (stating that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking [specific personal jurisdiction.]")). Indeed, Plaintiff's Amended Complaint is silent as to any alleged offense that Metcalf herself committed in connection with his transfer.[3]

The Court finds that Metcalf's alleged role as Vice President of CoreCivic does not alter the Court's conclusion that personal jurisdiction is lacking. *See SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 356 (6th Cir. 2014) (concluding that while personal jurisdiction over the bank existed, it would be unreasonable to find that personal jurisdiction existed over the vice president of the bank, even where the vice president allegedly made two phone calls to the forum state regarding the subject matter underlying the cause of action). The same is true with regard to Plaintiff's general allegation that Metcalf acted "in a supervisory role towards the agents/employees during the times stated in this action." (Dkt. No. 74 at 9, ¶ 26); *see Hill v. Pugh*,

---

personal jurisdiction over the defendants does not conflict with the fundamental notions of fairness required by the due process clause." *In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 550 (D.N.J. 2005) (concluding that the court had specific personal jurisdiction over an employee who allegedly signed filings that contained materially false and misleading information). Accordingly, the Court has specific personal jurisdiction over Washburn, but not Metcalf, because there is no allegation that an offense aimed at the Virgin Islands was personally committed by Metcalf.

[3] The Court notes that the only improper transfer claim that names Metcalf is Count 2—Kidnaping and False Imprisonment, which the Court has dismissed with prejudice. (Dkt. No. 86).

75 Fed. App'x 715, 719 (10th Cir. 2003) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state."); *McCabe v. Basham*, 450 F. Supp. 2d 916, 926 (N.D. Iowa 2006) ("[P]ersonal jurisdiction cannot be premised solely on a defendant's supervisory status.").

Where a nonresident defendant's contacts with the forum alone are insufficient to establish specific personal jurisdiction, a district court "must consider whether the application of *Calder v. Jones*, can change the outcome." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259-60 (3d Cir. 1998) (citation omitted). In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court set forth an "effects test" for determining personal jurisdiction over non-resident defendants who commit intentional torts with effects inside the forum state. "[U]nder *Calder* an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Indus., Inc.*, 155 F.3d at 260. In order to establish jurisdiction under the "effects test," the Third Circuit has found that a plaintiff must show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *Id*. at 265-66.

Because the forum is the Virgin Islands—rather than Florida, where a significant amount of the alleged tortious activity occurred—the Court finds that the forum cannot be said to be the focal point of the harm suffered by Plaintiff as the result of any tort, or that the forum could be said to be the focal point of the tortious activity. Indeed, while Plaintiff barely mentions Metcalf's

11

name in his Amended Complaint, the Court notes that Plaintiff alleges that it is Florida—rather than the Virgin Islands—where he allegedly bore the brunt of his injuries, which include alleged: exorbitant telephone rates; monitored attorney calls; inadequate cell lighting; and inadequate vocational opportunities. (Dkt. No. 74 at 31-48). Further, when Plaintiff asserts a breach of contract claim related to one of the aforementioned claims, he never names Metcalf as one of the parties who allegedly breached the contract. *Id*. In other words, Plaintiff does not allege that it is Metcalf who, in allegedly breaching a contract, improperly selected him for transfer, imposed exorbitant telephone rates, monitored attorney calls, allowed inadequate cell lighting, and provided inadequate vocational opportunities. Accordingly, the Court finds that the "effects test" does not aid Plaintiff in this regard.

In view of the foregoing, the Court will grant Metcalf's Motion to Dismiss based on personal jurisdiction.

### 3. Jurisdictional Discovery

Plaintiff has requested an extension of time—of approximately ninety days—to conduct jurisdictional discovery and respond to Defendant Washburn, Metcalf, and CoreCivic's Motion to Dismiss. (Dkt. No. 37 at 2).

Courts are to assist a plaintiff by allowing jurisdictional discovery only if a plaintiff alleges, with reasonable particularity, the possible existence of contacts between a defendant and the forum. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003) (citing *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). Indeed, plaintiffs may not "undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (citations omitted).

Under the circumstances here, the Court concludes that Plaintiff has in fact already sufficiently pleaded that the Court has personal jurisdiction over Washburn. However, the Court also concludes that Plaintiff has provided no basis to believe that the requisite contacts exist between Metcalf and the Virgin Islands. Thus, in order to avoid the type of "fishing expedition" that the Third Circuit is seeking to avoid, *Eurofins Pharma U.S. Holdings*, 623 F.3d at 157, the Court concludes that jurisdictional discovery is not warranted and will deny Plaintiff's request for jurisdictional discovery.

### 4. Howard

The Court concludes that it lacks general personal jurisdiction over Howard. Howard alleges that he does not have any contacts with the U.S. Virgin Islands. (Dkt. No. 33 at 5). He asserts that the only connection that he has with the Virgin Islands is that some of his dental patients are from the Virgin Islands, and that he has visited the Virgin Islands on two or three occasions by cruise ship—the most recent trip being over seven years ago. (Dkt. Nos. 33 at 6, 33-1). In response, Plaintiff vaguely asserts that he has "alleged sufficient 'minimum contacts' [between Howard] and the Virgin Islands to satisfy the requirements of personal jurisdiction under the due process clause of the Fourteenth Amendment." (Dkt. No. 58 at 3). In his Amended Complaint, Plaintiff alleges that Howard is a dentist who performed dental services for him in Florida. (Dkt. No. 74 at 9).

The Court finds that Plaintiff has failed to meet his burden of establishing that this Court has general jurisdiction over Howard. Howard's two or three cruise ship visits to the Virgin Islands are insufficient to establish general personal jurisdiction. *See, e.g.*, *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 199 (4th Cir. 2018) (finding no personal jurisdiction where, in the span of about nine years, the defendant traveled to the forum state six or seven times for primarily social visits that, at most, involved an informal and limited business discussion);

*Rodriguez v. City of Philadelphia*, No. CV 14-4435, 2017 WL 4957868, at *5 (E.D. Pa. Oct. 31, 2017) (holding that the court lacked general personal jurisdiction over a defendant who only visited the forum state once on a vacation); *In re Cendant Corp. Derivative Action Litig.*, 189 F.R.D. 117, 135 (D.N.J. 1999) (concluding that no general personal jurisdiction exists where the defendant, in part, visits the forum state socially once or twice a year).

Further, the Court finds that it lacks specific jurisdiction over claims against Howard, because no allegation exists that Howard purposefully directed his activities to residents of the Virgin Islands. *Metcalfe*, 566 F.3d at 334 (3d Cir. 2009). Howard's cruise ship visits to the Virgin Islands, together with the fact that some of the patients that he treats in Florida happen to be from the Virgin Islands, does not constitute the kind of purposeful direction of his activities to the forum to satisfy the requirements of specific jurisdiction. Through these contacts, Howard did not purposefully direct any activities to the Virgin Islands in such a way that Plaintiff's cause of action was born from these activities. *See Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007) (explaining that "the state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants. Jurisdiction is proper when the state of a plaintiff's residence is the focus of the activities of the defendant out of which the suit arises.") (quoting *Keeton*, Inc., 465 at 780) (internal quotation marks omitted).

Lastly, the Court finds that the application of the *Calder* "effects test" does not change the outcome. *IMO Indus., Inc.*, 155 at 259-60. This is because any alleged tortious activity by Howard occurred when he was performing dental treatment for Plaintiff in Florida. The Virgin Islands could not, therefore, be said to be the focal point of any harm suffered by Plaintiff as the result of any tort allegedly committed by Howard. Accordingly, the Court finds that it lacks personal

jurisdiction over any claim against Howard.[4]

### B. Failure to State a Claim

Washburn and CoreCivic also seek to dismiss Count 2—Kidnapping and False Imprisonment, Count 6—Exorbitant Telephone Rates, and any breach of contract claim against Washburn for failure to state a claim. (Dkt. No. 3 at 9-15).[5] Consistent with its September 1 Opinion, wherein the Court screened Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A, the Court will deny Washburn and CoreCivic's Motion to Dismiss for Failure to State a Claim as moot. Specifically, for the reasons set forth in the Court's September 1, 2021 Memorandum Opinions and Orders, the Court has already addressed and dismissed Count 2—Kidnapping and False Imprisonment and any breach of contract claim made pursuant to the 2015 Contract. (Dkt. Nos. 84, 86). On the other hand, the Court has addressed and allowed the following claims to proceed: Count 6—Exorbitant Telephone Rates and Unmonitored Calls[6] and any breach of contract claim made pursuant to the 2010 Contract between the Virgin Islands detention facility where Plaintiff was originally detained and the Florida detention facility

---

[4] In the alternative, Howard seeks to dismiss the breach of contract claims against him for failure to state a claim. (Dkt. No. 33 at 7-8). Because the Court has dismissed all claims against Howard for lack of personal jurisdiction, the Court need not reach Howard's alternative basis for dismissal.

[5] Metcalf joined in the failure to state a claim arguments in the alternative. (Dkt. No. 3 at 9-15). The Court need not address these alternative arguments because it has dismissed all claims against Metcalf for lack of personal jurisdiction.

[6] Washburn and CoreCivic specifically take issue with Plaintiff's exorbitant telephone rate claim (Count 6) under the Equal Protection Clause because he does not allege that he was treated differently from similarly situated inmates. (Dkt. No. 3 at 13-14). However, Plaintiff raises the Equal Protection Clause under the unmonitored attorney calls claim in Count 6, not the exorbitant telephone rates claim. (Dkt. No. 74 at 32). He alleges that he was singled out in this regard for filing grievances regarding the conditions of his confinement. *Id*.

to which he was transferred ("2010 Contract"). *Id.*[7] Accordingly, the Court will deny Washburn and CoreCivic's Motion to Dismiss for Failure to State a Claim as moot.

### III. CONCLUSION

In view of the foregoing, the Court will grant in part and deny in part Defendants Washburn, Metcalf, and CoreCivic's Motion to Dismiss. (Dkt. No. 3). Specifically, the Court will grant the Motion to Dismiss the claims against Metcalf for lack of personal jurisdiction; deny the Motion to dismiss the claims against Washburn for lack of personal jurisdiction; and deny as moot the Motion to Dismiss for failure to state a claim. The Court will also deny Plaintiff's requests for jurisdictional discovery and additional time to respond as set forth in his "Motion for Extension of Time." (Dkt. No. 37). Lastly, the Court will grant Defendant Howard's Motion to Dismiss for lack of personal jurisdiction. (Dkt. No. 33).

An appropriate Order accompanies this Memorandum Opinion.

Date: September 1, 2021              _____/s/_____
                                      WILMA A. LEWIS
                                      District Judge

---

[7] While Washburn argues that no breach of contract claim against him can stand because he is not a party to the contract, the contract upon which he relies is the 2015 Contract (Dkt. No. 3-3)—the contract under which any breach of contract claim has already been dismissed with prejudice. Washburn has not argued that he is not a party to the 2010 Contract, which is the contract to which the Court did not have access and under which the Court has allowed any breach of contract claim to proceed.